## William H. Anthony, trading as William H. Anthony & Co., v. Eugene P. Unangst, Appellant.

*Contract—Gambling contract—Margin—Stock.*

Where a stock broker and a customer engage in a series of wagering transactions in a particular stock which amount to gambling and the customer finally demands a delivery of the stock, and the broker agrees thereto, the customer is liable to the broker for the price of the stock, and his contract is not rendered invalid by his previous wagering transactions with the broker.

Argued Feb. 4, 1896. Appeal, No. 210, July T., 1895, by defendant, from judgment of C. P. Lehigh Co., Nov. T., 1894, No. 32, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit to recover the value of four hundred shares of stock. Before ALBRIGHT, P. J.

At the trial it appeared that on August 25, 1894, defendant directed plaintiff, a stock broker, to buy for him one hundred shares of stock of the Distillers & Cattle Feeder Company or Trust. Subsequently plaintiff directed defendant to buy another one hundred shares, and finally on September 7 he directed him to buy two hundred shares more. At various times defendant was called upon, and did put up additional margins. There did not seem to be much dispute that these were wagering transactions. On September 14, 1894, defendant demanded a delivery of the certificates for the four hundred shares, and said that he would take them if they were produced by 12 o'clock on September 18. Plaintiff denied that the stock was to be delivered by 12 o'clock, and testified that it was to be delivered on the 18th, without mentioning any hour, and that between 2 and 3 o'clock on the afternoon of September 18 he called upon defendant and tendered to him the certificates of the stock, which the defendant refused to receive.

The court charged in part as follows :

[The defendant alleges that the contract between the plaintiff and the defendant was of the forbidden kind—was a gambling transaction—and that therefore the plaintiff can in no event rely on it. Counsel for defendant takes the position that even if Unangst after the beginning, that is, on the 14th of September, actually ordered the shares and agreed to pay for them if they were delivered by the following Tuesday and failed to do so, he cannot be held liable for that breach of contract because it was in pursuance of an illegal arrangement between the parties before, and that that final contract would be tainted by the illegality of the former transaction, and that there could be no recovery, as the contract could not be enforced in law. The court is of the opinion that that position is not well taken, and that it is immaterial whether the transaction in its beginning, or as it was carried on down to September 14, was a wagering transaction or not. I say that that is immaterial, and that even if it was a wagering transaction yet, if it was followed by a contract between the parties such as the plaintiff alleges, and which the defendant does not deny, that on that day the defendant actually said that the shares should be pro-

duced, and if they were produced, and the defendant failed to take them according to his promise on the 14th or thereabouts, that then the plaintiff could recover.] [8]

[The illegality of a wagering stock transaction is not of such a nature that it will corrupt everything that may result from it. For instance, if a person were to employ another to commit a crime—say to burn down another man's buildings unlawfully—and for a consideration, and after it was done there should be a bond or note or a written promise to pay the price of that illegal act given, the illegality of the original transaction would taint the whole and there could never be a recovery. But the illegality of a wagering stock transaction is not of that nature. If the parties afterwards agree upon and make an arrangement which is lawful in itself, then the previous illegality will not taint it. So we instruct you that you need not concern yourselves to inquire whether the transaction down to September was a wagering transaction or not; you need not pass upon that question, and respecting it the court gives you no instructions. What we have said was simply for the purpose of explaining to you what is meant by the references to gaming transactions. You will understand, gentlemen of the jury, that you are to inquire only whether on September 14 Mr. Unangst ordered the shares of stock in question from Anthony, and whether he said to him that he should produce the shares. Of course by "shares" was meant, as all the parties agree, the shares that had before been in question and had been dealt about—the four hundred shares—and there is no doubt that the price meant, and you can safely take the price to have been, the price that had before been specified, 20 for a hundred shares, 20½ for another hundred and for the other two hundred shares 16¾, and, as I have already remarked, Mr. Unangst admitted that he then said the shares should be produced or that he called for them. Therefore, the main question for you to decide is whether the contract was that the shares were to be produced not later than 12 o'clock on Tuesday, or whether it was said on Tuesday merely; for, as I have already said to you, Mr. Unangst was bound to take them if they were tendered to him at or before the time limited, and if they were not offered to him within the time limited then he was not bound to take them and is not liable for not taking them.] [9]

I believe the parties agree that on Tuesday the shares of stock in question were offered; they agree that Mr. Anthony came to Mr. Unangst on that Tuesday, and I believe they both say — Anthony certainly does — and I think Mr. Unangst also, that Anthony then offered the shares; they agree also that it was after 12 o'clock; Mr. Anthony, I believe, says that it was about half-past 1, and Mr. Unangst, if I am not mistaken, said it was in the neighborhood of 2 o'clock — at least they agree that it was after 12 o'clock. The question is for you to determine, and you are to determine it by the weight of the evidence because there is evidence supporting each assertion, what was the contract as to time on that Tuesday, and this is an important matter and you are to consider it very carefully. It is not necessary, and hardly proper, that I should comment upon the evidence bearing upon the one view or the other, and it is not part of the court's duty to do so.

[Is it proved that Mr. Anthony tendered the stock within the time agreed upon between him and the defendant? If he did, then he is entitled to recover; and if he did not, then he did not perform the contract that he depends on and claims on, and then your verdict will be for the defendant, because the plaintiff distinctly claims upon that contract. He alleges that the stock was ordered on the 14th, and that he tendered it according to the agreement and that he tendered it on Tuesday afternoon, and that no time as to when they were to be delivered on Tuesday was specified and that he had the whole day for it, and so he had if there was no limit. This is his claim. If the plaintiff is entitled to recover, you must determine the amount, and, in ascertaining it, you would allow the defendant credit for what he had before paid taking the shares of stock at the price agreed upon when they were ordered originally and what they were afterwards sold for, because the plaintiff says that when Mr. Unangst refused to take the shares he had them sold, which he had a right to do, making a fair sale — and that he credited Mr. Unangst with what they brought. If the plaintiff is entitled to recover, you must decide what the amount owing by the defendant to the plaintiff is. I believe the defendant said that $1,225 was conceded by him to be owing provided the transaction was not illegal. However, our instruction to you is that the defendant is not liable for that sum unless he is liable by

virtue of that contract alleged to have been made on the 14th of September.] [10]

[Defendant's counsel has stated what you have just heard; he says that the attitude of the defendant is this : That he did not on Friday the 14th order the stock, but that while there was some talk about it then that the parties met again on Monday, which would have been the 17th, and that then there was some further discussion as to Unangst paying a further sum of money, and that then Mr. Unangst said that he would take the stock if it was produced not later than Tuesday noon, and that upon that Mr. Anthony ordered the stock to be bought. You will consider that and I modify my instructions to this extent, that, if at any time before Tuesday Mr. Unangst ordered the stock and agreed to take it by a specified time, then he was bound to take it, but he was bound to take it only if it was tendered to him within the time that he agreed upon. Therefore what I have said before would be modified only to this extent that the contract to take the stock on Tuesday or on Tuesday not later than 12 o'clock may not have been made on the 14th, Friday, but might have been made on Monday, or, if you please, partly on Friday and partly on Monday. Before Tuesday had the defendant ordered the stock and agreed to pay for it? I believe he admits that he had ordered it, but, as his counsel says, not on the previous Friday, but on that Monday. It really would not in my estimation matter much or at all when he had ordered it as to those days.] [11]

Verdict and judgment for plaintiff for $1,269.50. Defendant appealed.

*Errors assigned*, among others, were (8–11) portions of charge as above, quoting them.

*Morris L. Kauffman, John Rupp* with him, for appellant.—It was not contemplated by either party that any stock should be purchased and ultimately paid for and delivered, but a mere dealing in stock by way of margins, settling of differences and payment of gains or loss. That such an arrangement is contrary to public policy and illegal and void, and no action can be sustained thereon by either party thereto, has been many times decided by this court: Maxton v. Gheen, 75 Pa. 166 ; Brua's

App., 55 Pa. 294; Fareira v. Gabell, 89 Pa. 89; North v. Phillips, 89 Pa. 250; Waugh v. Beck, 114 Pa. 422; Dickson's Executors v. Thomas, 97 Pa. 278; Smith v. Bouvier, 70 Pa. 325; Gaw v. Bennett, 153 Pa. 247.

There was no new contract made, either on the 14th or 17th of September, by which the defendant agreed to purchase and pay for the stock in question, untainted by the illegality of the former transactions between the parties.

*Edward Harvey,* for appellee, was not heard, but cited in his printed brief, 23 Am. & Eng. Ency. of Law, 700; Biddle on Law of Stock Brokers, 378; Markham v. Jaudon, 41 N. Y. 235; Smith v. Bouvier, 70 Pa. 325; Ruchizky v. DeHaven, 97 Pa. 202; Gillett v. Whiting, 120 N. Y. 402; Peters v. Grim, 149 Pa. 163; Brooks v. Martin, 2 Wall. 74.

PER CURIAM, February 17, 1896:

Aside from the testimony introduced by the defendant for the purpose of showing a clear understanding between the plaintiff and himself that the shares of stock ordered from time to time by the latter were neither to be delivered nor accepted,— in other words, that their business transactions with each other were merely successive steps in the execution of a wagering contract,—there was testimony tending to prove that shortly before the termination of their business relations, the defendant called for the stock, and his demand was honored by the production and tender thereof, but he refused to accept the stock and pay for it. If these facts were established to the satisfaction of the jury, it is immaterial what was the character of the transactions previously thereto. The testimony referred to was fairly submitted to the jury by the learned president of the common pleas, with correct and adequate instructions as to the effect of such demand, tender and refusal, in case the jury found the facts in relation thereto to be as claimed by the plaintiff. The verdict necessarily implies a finding of these facts in plaintiff's favor and should therefore be conclusive.

There is nothing in either of the specifications that requires discussion. They are all dismissed.

Judgment affirmed.