## Assigned Estate of L. H. Taylor & Company.     Appeal of William H. Howard.

*Contracts—Gambling contracts—Speculation in stock—Margin.*

A purchase of stock for speculation, even when done merely on margin, is not necessarily a gambling transaction. If there is in good faith a purchase, then the delivery may be postponed, or made to depend on a future condition, and the stock carried on margin or otherwise, in the mean while, without affecting the legality of the operation. It is only where there is not under any circumstances to be a delivery, as part of and completing a purchase, that the transaction is a gambling contract.

An agreement for an actual sale and purchase of stock will make the transaction valid, although it originated in an intention merely to wager.

The books of a broker showed on their face that stocks ordered to be bought or sold by a customer were actually bought and sold. The first transaction was an actual purchase of stock and delivery of certificate to the customer. The close of the transactions two years and a half later showed a large number of shares in the hands of the brokers bought for the customer and of which he demanded delivery, and other shares sold for him which he had in his possession ready to deliver. As to the inter-

mediate transactions the customer testified that it had always been his intention to buy the stocks out and out and pay for them, and that he had the money with which to do it. *Held*, that the evidence was not sufficient to sustain an auditor's finding that the transactions were of a wagering character.

Argued March 27, 1899. Appeal, No. 7, Jan. T., 1899, by William H. Howard, from order of C. P. No. 1, Phila. Co., Dec. T., 1895, No. 556, dismissing exceptions to auditor's report. Before GREEN, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.

The auditor, Francis Shunk Brown, Esq., reported on the claim of William H. Howard as follows:

H. C. Todd, Esq., presented claim of William H. Howard for $11,921.62. Mr. Howard is a capitalist and a farmer. On March 13, 1893, he bought 100 shares of Lehigh Coal and Navigation Company for $4,337.50, and the next day paid L. H. Taylor & Company $2,000. During the month of April, 1893, he appears to have ordered, bought and sold about 1,200 shares of stock. On April 30, 1893, he ordered sold "short" 100 shares of Baltimore and Ohio Railroad Company and 100 shares of Philadelphia, Reading and New England Railroad Company. On July 31, 1895, he owed Taylor & Company $50,161.61. In November, 1895, he again turned "bear," selling "short" in that single month 500 shares of Reading Railway Company, 200 shares of American Tobacco Company, 100 shares of American Sugar Refining Company, common, and 100 shares of Welsbach Light Company. In December, 1895, he also made short sales of Welsbach Light Company and American Sugar Refining Company, common. The account had been closed in 1893, but reopened thereafter. No stock was delivered to him after March 13, 1893, when the account was reopened. He testified that he did not intend to gamble. The account, however, including his enormous short sales, has all the earmarks of a gaming transaction, and I so find it. I disallow the claim.

*Errors assigned* were in dismissing exceptions to auditor's report.

VOL. CXCII—20

*John G. Johnson*, with him *Henry C. Todd*, for appellant.—
Though Howard deposited money and shares of stock with the
brokers as collateral security for gambling transactions, yet if
the gambling transactions were fully closed, leaving in the
hands of the brokers the original deposit, or a part thereof, he
was entitled to a recovery of so much thereof as remained:
McNaughton Co. v. Haldeman, 160 Pa. 144; Anthony & Co.
v. Unangst, 174 Pa. 10; Dauler v. Hartley, 178 Pa. 23; Peters
v. Grim, 149 Pa. 163; Repplier v. Jacobs, 149 Pa. 167; Mor-
awetz on Private Corporations, sec. 721; Waterman on Corpo-
rations, sec. 161; Brooks v. Martin, 2 Wall. 70; Marsh v. Ful-
ton County, 10 Wall. 676; Louisiana v. Wood, 102 U. S. 294;
Spring Co. v. Knowlton, 103 U. S. 49; Penna. R. Co. v. St.
Louis, etc., R. R. Co., 118 U. S. 290; Pittsburg, etc., Ry. Co. v.
Keokuk, etc., Bridge Co., 131 U. S. 371; Logan County Bank
v. Townsend, 139 U. S. 67; Block v. Darling, 140 U. S. 234;
St. Louis, etc., R. R. Co. v. Terre Haute, etc., R. R. Co., 145
U. S. 393.

The auditor erred in deciding that the transaction between
Howard and the brokers were gambling transactions.

*Richard C. Dale*, with him *C. Berkley Taylor*, for appellees.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1899:

It has been settled by this Court so often that it ought not to
require reiteration that dealing in stocks even on margins is not
gambling.   Stocks are as legitimate subjects of speculative buy-
ing and selling as flour or dry goods or pig iron.   A man may
buy any commodity, stock included, to sell on an expected rise,
or sell "short" to acquire and deliver on an expected fall, and
it will not be gambling.   Margin is nothing but security, and
a man may buy on credit, with security or without, or on bor-
rowed money, and the money may be borrowed from his broker
as well as from a third person.   The test is, did he intend to
buy, or only to settle on differences?   If he had bought and
paid for his stock, held it for a year and then sold, no one would
call it gambling and yet it is just as little so, if he had it but an
hour and sold before he had in fact paid for it.   And so with
selling.   Every merchant who sells you something not yet in
his stock but which he undertakes to get for you, is selling

" short," but he is not gambling, because, though delivery is to be in the future, the sale is present and actual.   The true line of distinction was laid down in Peters v. Grim, 149 Pa. 163, and has not been departed from or varied, " A purchase of stock for speculation, even when done merely on margin, is not necessarily a gambling transaction.   If one buys stock from A and borrows the money from B to pay for it, there is no element of gambling in the operation, though he pledges the stock with B as security for the money.   So, if instead of borrowing ·the money from B, a third person, he borrows it from A or, in the language of brokers, procures A to ' carry ' the stock for him, with or without margin, the transaction is not necessarily dif· ferent in character.   But in this latter case, there being no transfer or delivery of the stock, the doubt arises whether the parties intended there should ever be a purchase or delivery at all.   Here is the dividing line.   If there was not under any cir- cumstances to be a delivery, as part of and completing a pur- chase, then the transaction was a mere wager on the rise and fall of prices, but if there was in good faith a purchase, then the delivery might be postponed, or made to depend on a future condition, and the stock carried on margin or otherwise in the mean while, without affecting the legality of the operation." This has been uniformly followed: Hopkins v. O'Kane, 169 Pa. 478; Wagner v. Hildebrand, 187 Pa. 136.   And the rule goes so far that an agreement for an actual sale and purchase will make the transaction valid though it originated in an intention merely to wager: Anthony & Co. v. Unangst, 174 Pa. 10.

Turning now to the facts of the present case, it is clear that the law was not correctly applied by the auditor and the court below.   The brokers made an assignment on December 21, 1895, on which day they held certain stock for appellant, which they had bought on his order, and he had certain other stock which they had sold on his order, but which he had not yet delivered to them.   He desired to close the account, complete the mutual deliveries and receive the balance which the transactions left in his favor.   He was entitled to do so, even if the transactions were wagering, the agreement of the parties to make the sales actual would, under Anthony & Co. v. Unangst, 174 Pa. 10, supra, have made them valid.   It is true, the settlement was not actually made until January 10, but it was made as of

December 20, the day before the assignment, and the auditor reports that there had been no change of values meanwhile. The time of striking a balance on the books and delivering the stock was not important.  Delivery is not in itself a material fact.  Its only value is as evidence of the intent to make a bona fide sale.  If such is the intent, the delivery may be present or future without affecting validity.

But there was no sufficient evidence that the transactions were illegal at any time.  The auditor reports that "the stocks ordered to be bought or sold by the customers of L. H. Taylor & Co. were, as shown by their books, actually bought and sold, and as this evidence is uncontradicted I must and do so find. . . . . Thus, so far as L. H. Taylor & Co. were concerned, the transactions were not fictitious, but were actual purchases and sales of stock."  This finding should have been a warning to caution in taking a different view of the appellant's position in the transactions.  It is true, the purchase or sale may be actual on part of the broker and merely a wager on part of the cus--tomer (see Champlin v. Smith, 164 Pa. 481), but there should be at least fairly persuasive evidence of the difference.  There is none here.  The transactions covered by the account began with a small cash balance to appellant's credit, followed by an order to buy 200 shares of Wabash common, which were bought by the brokers, paid for by appellant and delivered to him.  The close, two years and a half later, showed, as already said, a large number of shares in the hands of the brokers, bought for appellant, and of which he demanded delivery, and other shares sold for him and which he had in his possession ready to deliver. As to the intermediate transactions, appellant testified, "It was always the intention to buy the stocks out and out and pay for them, and I had money to do it with."  In the face of these facts and this uncontradicted testimony, the auditor found that "the account, including his enormous short sales, has all the earmarks of a gaming transaction and I so find it."  This was a mere inference, unwarranted by the account itself, and wholly opposed to all the evidence in the case.

Judgment, so far as it relates to appellant's claim, reversed and claim directed to be allowed.