## CONRADT v. LEPPER.

APPEAL AND ERROR—BILL OF EXCEPTIONS—MORTGAGE, EXECUTION OF—
EXECUTION IN ANOTHER STATE—CONSIDERATION—ASSIGNMENT—
RIGHT OF MORTGAGOR TO ATTACK CONSIDERATION PASSING BETWEEN
MORTGAGEE AND ASSIGNEE—SEPARATION OF LEGAL FROM ILLEGAL
CONSIDERATION—CONFLICT OF LAWS—PLACE OF PERFORMANCE OF
CONTRACT EXECUTED IN ANOTHER STATE—STATUTORY CONSTRUC-
TION—MARGINAL STOCK TRANSACTIONS.

1. In the absence of anything in the bill of exceptions to indi-
cate the contrary, the signature of the trial judge to the bill
imports verity, and will be presumed a sufficient verification
of the truth of the statements therein contained.

2. It is unnecessary to incorporate in the bill of exceptions a
copy of the journal entry overruling the motion for a new
trial, but it is sufficient in that respect if the bill recites a
denial of the motion and an exception thereto.

3. The fact that a mortgage is not witnessed does not affect its
validity as between the parties; and in an act to foreclose
brought by the mortgagee against the mortgagor the latter
cannot be heard to defend against his conveyance, other-
wise properly executed, on the sole ground that it is not
witnessed.

4. A mortgage upon real estate situated in this state is subject
to the statutes of this state relating to its execution, though
executed in another state.

5. When the consideration of a mortgage consists of several
distinct transactions, some legal and others illegal, which
can be separated from each other with certainty, the mort-
gage may be upheld for that part of the consideration which
is free from the taint of illegality.

6. In an action to foreclose a real estate mortgage by the as-
signee thereof against the mortgagor, it is no defense that
the consideration for the assignment as between the orig-
inal mortgagee and his assignee, the plaintiff, was an illegal
marginal stock transaction; the consideration of the mort-
gage itself being untainted.

7. Where, upon, and in consideration of, the discharge of a
former valid mortgage by the assignee thereof, the mort-
gagor has executed to said assignee a new note and
mortgage for a larger amount, including as a part considera-
tion the same debt secured by the former mortgage, and
the balance of the amount of the new note and mortgage

represents an illegal indebtedness of the mortgagor upon marginal stock transactions, the mortgage will be good and enforceable to the extent of the debt secured by the first mortgage.

8. Where a note and mortgage are executed in another state, where the parties at the time resided, and designate no place of payment, the obligation must be considered as payable at the place of execution, though the mortgage covers property in this state.

9. Where a mortgage upon property in this state is executed in another state, to secure the payment of a note of the mortgagor made and to be performed in such other state, the validity of the consideration must be determined according to the laws of such state; and in such case the illegality of the debt in the state where it was contracted will be sufficient to defeat a foreclosure of the mortgage.

10. Construction of a constitutional provision of another state must be governed by the construction given it by the courts of that state.

11. The constitution of California provides that "all contracts for the sale of shares of the capital stock of any corporation or association, on margins or to be delivered at a future day, shall be void, and any money paid on such contract may be recovered by the party paying it by suit in any court of competent jurisdiction." In an action brought in this state to foreclose a mortgage made in California to secure a note made there alleged by the defendant to have been given to secure or protect his account with stock brokers upon illegal marginal stock transactions. *Held*—

(1) That the evidence justified the finding that as to so much of the consideration not represented by a former mortgage, the mortgage in controversy was given to protect defendant's account in stock dealing transactions, or was held as security therefor; and so much of such account as constituted marginal stock transactions was void, and to that extent the consideration of the mortgage was void.

(2) Though stock is purchased upon margin, if the customer afterward pays the broker the amount of advancements made by him, and for which the broker holds the stock as security, and the customer thereupon receives the certificates of stock, it then becomes a legal transaction in its entirety as to such stocks, and no action will lie against the

broker to recover back the money paid on the stock so delivered.

(3) Where the stock, though originally purchased on margin, is delivered to the customer or his agent at his request by the broker, such delivery cures any illegality in the transaction that may have existed relative to the stock so delivered, and the broker becomes entitled to credit for any money advanced by him upon the stock so delivered, either as purchase price, commissions, assessments or interest thereon.

(4) Money advanced by the broker for the defendant at his request to close his account with a former broker, upon receipt of the stock held by the latter on defendant's account, together with legal interest thereon, after deducting the proceeds of that portion of such stock afterward sold by the broker and placed to defendant's credit, will constitute a valid charge against the defendant.

(5) Cash advanced by the broker to defendant individually will constitute a valid charge against defendant, though charged in the general account which included marginal stock transactions.

(6) As to stock delivered by the broker, for whose security the mortgage was given, to other brokers, at defendant's request, such other brokers upon such delivery paying the former the balance due him on that stock, the transaction between him and the defendant was legalized. Such delivery upon payment amounted to a delivery to defendant as between him and the broker who had originally purchased the same on margin.

(7) To the extent that the account secured by the mortgage may show any indebtedness from defendant upon stock transactions consisting of the purchase or sale of stock without delivery, it is void, and to that extent will not furnish a valid consideration for the mortgage.

[Decided July 5, 1905. Rehearing denied August 28, 1905.]

(80 Pac., 307.)

ERROR to the District Court, Albany County, HON. CHARLES W. BRAMEL, Judge.

Action to foreclose a mortgage by .H. Julius Conradt against William Lepper. From a judgment in favor of defendant the plaintiff brought error. The facts are stated in the opinion.

*Corlett Downey* and *C. P. Arnold,* for plaintiff in error.

The constitutional provision of California relating to marginal stock transactions has been construed by the highest court of that state to apply to a transaction where any broker purchases stock for a customer with his own money, charging only commissions and interest thereon, and retaining the stock as security until its sale, the customer putting up only a certain margin, and receiving the profit or paying the loss. (Cashman v. Root, 89 Cal., 373; Wetmore v. Barrett, 103 Cal., 325; Sheehy v. Shinn, id., 325; Rued v. Cooper, 119 id., 463; Kullman v. Simmons, 104 id., 595.) The defendant seeking to defeat the contract in suit affecting real estate situated here by setting up the law of a foreign jurisdiction declaring certain contracts void, which in the absence of such legislation are legitimate and valid, has the burden of proof as to such defense, and should show by satisfactory evidence that the mortgage in question was executed upon the consideration alleged; and in this we think that the defendant wholly failed. The testimony of his own witnesses show that the consideration for the mortgage had nothing to do with the transaction declared illegal by the laws of California, where the mortgage was executed. It clearly appears that the original mortgage from Lepper to Weigleb was made upon a valid consideration, and that the new mortgage to the plaintiff in this case was given upon the satisfaction or discharge of the Weigleb mortgage. It is clear that the assignment from Weigleb to the plaintiff of the first mortgage had no connection with the defendant's operations in stocks. Moreover, at the time the new mortgages were given to the plaintiff he had dissolved his connection with the firm of stock brokers with whom the defendant had stock dealings and the balance of

the consideration of the mortgage in suit was paid to the plaintiff in cash.

The California constitution denounces dealing in "margins" and contracts for the sale of the stock of corporations where the stock is not delivered. It was not directed, nor could it be directed, to completed contracts where the subject of the transaction is fully paid for and actually delivered. The testimony shows a final settlement between defendant and his brokers, Gauthier & Co., by an actual delivery of the stocks to other brokers upon defendant's account at his request. The net value of these delivered stocks, after deducting the amount owing by defendant, was $4,764.40 on the date of delivery. It cannot, therefore, be successfully contended that the defendant could have obtained a delivery of the stocks by paying for them in full and at the same time sue the broker on the theory that the stocks were not delivered 'and his interest in them only evidenced by a marginal payment. (Cashman v. Root, 89 Cal., 373; Sheehy v. Shinn, 103 id., 325.) When the legal title of the stock passes from the broker and possession is given, the relation between the parties is not that of broker and customer, but becomes that of vendor and vendee on an executed contract for the purchase of personal property.

The mortgage covers land in this state, and it is, therefore, to be construed as a Wyoming contract and to be governed by the laws of this state. And in this state the contract between the defendant and his broker was as legitimate and valid as any other contract relating to the purchase and sale of personal property. (28 Ency. Law (2d Ed.), 1068.) The validity and the construction and effect of a transfer of title to or interest in land are determined by the laws of the place where the land is situated, and this principle applies as well to mortgages as to conveyances absolute. (22 Ency. Law (2d Ed.), 1327; Story Conf. L., Sec. 609; 2 Parsons on Contracts, Sec. 572; Swank v. Hufnagle (Ind.), 12 N. E., 303; Goddard v. Sawyer, 9 Allen, 78; Doyle v. McGuire, 38 Ia., 410; Hosford v.

Nichols, 1 Paige, 220; Baum v. Birchall, 150 Pa. St., 164; Fessendon v. Taft, 65 N. H., 39; Chapman v. Robertson, 6 Paige, 627; Trust Co. v. Rathbone, 5 Sawyer, 32; Curtis v. Hutton, 57 Miss., 451; U. S. v. Crowsby, 7 Cranch, 115; Manton v. Seiberling, 107 Ia., 534; 1 Jones on Mortg. Forc., 345; Giffin v. Giffin, 18 N. J. Eq., 104; Thomas v. Kyle, 23 So., 12; Gault v. Trust Co., 38 S. W., 1065.) The mortgage in question was valid under the laws of this state, even if it had been part of a transaction involving dealings in stocks. (R. S., Sec. 2187; Kinney v. Edwards, 55 Pac., 306.)

The execution of the mortgage was expressly admitted in the answer of the defendant, and after the trial the defendant sought to substitute an amended answer denying the execution of the mortgage. It is, however, a familiar rule that an admission in the pleading is conclusive upon the parties and must be taken as true for all the purposes of the cause. (11 Ency. Law (2d Ed.), 447; R. R. Co. v. Morton, 61 Fed., 814; Elec. Works v. Finck, 47 Fed., 583; Wade v. R. R. Co., 149 U. S., 327; Jeffreys v. Jeffreys, 139 Ill., 368; Hewitt v. Morgan, 88 Ia., 468; Assur. Fund v. Boesse, 92 Ky., 290; Bean v. Schmidt, 43 Minn., 505; Franch. Co. v. Simms, 36 Mo. App., 229; Foley v. Haltry, 41 Neb., 563; Sinis v. Davidson, 54 N. Y. Sup., 235; Robertson v. Sayer, 139 N. Y., 97.)

In the event that the last mortgage of the series was invalid, the plaintiff would, however, be entitled to the lien granted by the first mortgage, and equity will set aside the cancellation of the first mortgage and revive the same for the benefit of the assignee. 22 Ency. Law (2d Ed.), 247.)

*H. V. S. Groesbeck,* for defendant in error.

The amended answer did not state a new cause of action and raised no new issue; the court did not abuse its discretion in permitting the filing of such amended answer. (R. S. 1899, Sec. 3588; Horton v. Bristol, 77 Pac., 354.) What was the consideration of the promissory note and the

mortgage given to secure the same? In our opinion the record discloses that it was a marginal transaction. The testimony preponderates in favor of the claim of the defendant that no money was exchanged upon the giving of the note and mortgage; the testimony of the plaintiff on that question stands alone, and the facts and incidents of the entire transaction disputes it. The evidence in the case is clear, convincing and satisfying: first, that the dealings between the defendant and Weigleb and the firm of which the plaintiff was a member was a marginal transaction and, therefore, illegal; second, that the consideration of the note and mortgage in suit grew out of those dealings and was, therefore, illegal. Not one share of stock purchased by the firm was delivered to Lepper, nor to anyone up to and including July 16, 1891, the date of the note and mortgage. It was not until August 10, twenty-five days later, that the stock held by the firm was delivered to another broker,.and there must have been additional assets and liabilities incurred after the date of the note and mortgage.

Such delivery to other brokers did not divest the entire transactions of their marginal nature. The defendant is not seeking to recover any portion of the money paid to the broker upon the delivery of the stock August 25, 1891. He is simply asking for the cancellation of the illegal note and mortgage given to secure his account with the brokers, and dealings between himself and the brokers on margins, prior to July 16th, the date of the note and mortgage in question. Under the decisions of the Supreme Court of California, cited by plaintiff in error in his brief, the constitutional provision of that state prohibiting marginal transactions has been upheld, and that provision has been applied to transactions similar to that of the case at bar. (See cases cited for plaintiff in error, and also Parker v. Otis, 130 Cal., 322.) The law is not silent upon this subject in Wyoming. The California law has pronounced the transaction a gambling transaction. If it was a gambling transaction there, the consideration of the note was a gambling con-

tract, and they now seek to enforce that contract and the mortgage securing it in this state. The statute of this state provides that where the consideration of any contract or conveyance is money, property or other valuable thing won by any gaming, the same shall be utterly void and of no effect. (R. S. 1899, Sec. 2187; Kinney v. Hynds, 7 Wyo., 22; Swinney v. Edwards, 8 Wyo., 54.) The note was a California obligation and contract, payable there, and if void in that state it must be void in every other jurisdiction. If the note fails, the mortgage must also fail, since the latter is but an incident of the note. (Hepburn v. Warner, 112 Mass., 271; Jackson v. Blodgett, 5 Cowen, 202; Jackson v. Willard, 4 Johns., 43; Carpenter v. Longan, 16 Wall., 271; Kenicott v. Supervisors, 16 Wall., 452.) The mortgage and note must be construed as one contract and instrument. (Boone on Mortg., Sec. 4, and cases cited; Schultz v. Bank, 141 Ill., 116; Leavitt v. Palmer, 3 N. Y., 19; Swearington v. Lehner, 93 Ia., 147; Evans v. Beaver, 50 O. St., 190; 20 Ency. Law (2d Ed.), 1030; Graham v. Blinn, 3 Wyo., 751; Balch v. Arnold, 9 Wyo., 35.) A mortgage executed upon an illegal consideration is void *ab initio,* because the nullity of the principal debt destroys all securities accompanying it. Every contract or agreement, the consideration for which is immoral, criminal or unlawful, is absolutely void, and no action can be maintained for its enforcement. (Wiltsie on Mortg., Sec. 342.)

The validity of the mortgage is to be construed by the laws of California and not by the laws of this state, since the note and mortgage were both made in California, where the parties at the time resided. (22 Ency. Law (2d Ed.), 1327-1330; Lockwood v. Mitchel, 7 O., 387; De Wolf v. Johnson, 10 Peters, 443; Falls v. U. S. Bldg. Co., 97 Ala., 47; Armstrong v. Best, 112 N. Car., 59; Wiltsie on Mortg., 345; Cope v. Wheeler, 41 N. Y., 303; McCraney v. Alden, 46 Barb., 272; Dolman v. Cook, 14 N. J. Eq., 56; Kennedy v. Knight, 21 Wis., 340; Newman v. Kershaw, 10 Wis., 333; Williams v. Fitzhugh, 37 N. Y., 444; Williams v.

Ayrault, 31 Barb., 364; Dobin v. Hewett, 19 La. Ann., 513; Blydenburg v. Cotheal, 5 N. J. Eq.)

The mortgage is void for another reason: it was not witnessed by any subscribing witness as required by the laws of this state. (State ex rel. v. Cowhick, 9 Wyo., 93; R. S. 1899, Secs. 2741, 2745, 2746.)

There is a fatal defect in the bill of exceptions. The bill does not contain the order of the trial court sustaining the motion for a new trial after the first judgment, and in denying the motion of plaintiff in error for a new trial after the last judgment; and because there is no recital in the bill that it is found to be true by the judge allowing and signing it. There is a statement in the bill that the several motions for a new trial were passed upon by the trial court and a bare recital of the ruling thereon, but this comes far short of meeting the requirements established by many courts, evidently approved by this court in the case of Freeburgh v. Lamoureux, 73 Pac., 545.

*C. W. Bramel,* for defendant in error, on petition for rehearing.

Upon the former hearing the theory of the plaintiff in error was that the note and mortgage were to be tested by the law of the place where the real estate was situated, and, therefore, the mortgage should be upheld, while the theory of the defendant in error was that the note and mortgage constituted a California contract and that under the law of that state the contract must fall. Neither party considered any other matter. The several considerations that went into the total consideration of the note and mortgage were not touched upon by counsel, and were not considered, argued or adverted to, and the record that was made was not alluded to upon that proposition. These matters, which formed the basis for a reversal of the judgment, were not presented, and for this reason alone a rehearing should be granted. The transaction was a marginal one, and Gauthier and Conradt sought to evade the laws of California; or the

consideration running to Conradt wholly failed by reason of the dissolution of the co-partnership, and by reason of the fact that he never paid the money, which is certainly established by the record. Is a court of equity to close its eyes to all of these matters and now call for an accounting, not to protect Conradt, but to aid and assist Gauthier? How could the delivery of the stock by Gauthier & Co. to Fritsch & Co. cure the illegal transaction and make that good which was illegal? The contract in this case was clearly illegal under the decisions of the courts of California cited in the former brief.

VAN ORSDEL, JUSTICE.

This is a proceeding in equity to foreclose a mortgage upon certain real estate situated in Albany County, Wyoming. The parties here sustain the same relation that they did in the trial court and will be referred to respectively as plaintiff and defendant. The mortgage in question is the last of a series of three mortgages executed by the defendant Lepper upon the same property. All of the mortgages, and the notes for which they were security, were executed in the State of California, where the parties in each instance resided.

On December 19, 1886, the defendant executed a mortgage to one Carl Weigleb upon the property in question, to secure the payment of a note of even date therewith, for the sum of sixteen or eighteen hundred dollars, there being a conflict in the evidence as to the exact amount of this note and mortgage. Neither the note or mortgage were offered in evidence, and it is impossible to ascertain the exact amount from anything that appears in the record. On June 20, 1889, Weigleb assigned this note and mortgage to the plaintiff, Conradt. On June 23, 1891, the defendant executed to the plaintiff a mortgage upon the property in question, with a note of even date therewith, to secure the sum of two thousand dollars, plaintiff releasing the original mortgage to Weigleb as part of the consideration for the

new mortgage. On July 16, 1891, the defendant executed to the plaintiff a mortgage on the same property with a note of even date therewith for the sum of thirty-five hundred dollars, a part of the consideration of which was the cancellation and surrender of the two thousand dollar mortgage. This last mortgage and the note for the payment of which it is security are the subjects of this litigation.

The plaintiff in his petition asks for a decree of foreclosure and sale of the property, and for a judgment against the defendant for any deficiency that may remain after applying all the proceeds of said property to the satisfaction of the judgment. Defendant answered by admitting the execution of the note and mortgage, but alleging that the note and mortgage were made to the plaintiff without consideration. The further defense was interposed that the plaintiff, at the time the transactions in question occurred, was a member of a firm of stock brokers doing business in the State of California, in the firm name of E. Gauthier & Co., and that the note and mortgage in question were made to the plaintiff as trustee for said firm to secure marginal losses incurred by the defendant in his dealings in mining stocks on the board of trade through said firm; relying upon the provision of the constitution of California, prohibiting the buying and selling of the capital stock of corporations on margins or for future delivery, declaring all such contracts void and providing for the recovery of money paid in such transactions. Plaintiff in his reply denied generally the allegations of the defense and all matters of fraud or avoidance set up and charged in the answer.

At the trial of the cause the defendant filed an amended answer, alleging, in addition to the defense set forth in the original answer, that the mortgage was not witnessed and was, therefore, not entitled to record and void, and asked for a cancellation of the mortgage and note, and for judgment against the plaintiff in the sum of $1,071.05, for rents collected by the plaintiff on said property and alleged to have been wrongfully applied to the payment of interest on said

note and mortgage. The amended answer, on motion of counsel for plaintiff, was stricken from the files. The case was tried and the court rendered judgment for the plaintiff. A motion for a new trial was filed by counsel for defendant and the court sustained the motion. A second trial was had on the same evidence and the court entered judgment for the defendant. The decree cancelled the note and mortgage and gave the defendant judgment against the plaintiff in the sum of $1,206.20 and for costs. A motion for a new trial was filed within time by counsel for plaintiff and overruled by the court. Exception was taken to the ruling of the court, and from the order overruling said motion error is prosecuted to this court.

The plaintiff in error has filed a motion in this court to strike the bill of exceptions from the files, for the reason that it does not contain the order of the court overruling the motion for a new trial, and for the further reason that there is no finding by the judge signing the same that the said bill is true or contains a true recital of the facts therein contained. In the absence of anything to indicate that the facts set forth in the bill of exceptions are not true, the signature of the trial judge to the bill imports verity and will be presumed to be a sufficient verification of the truth of the statements therein contained. In the bill of exceptions, immediately following a copy of the motion for a new trial, we find the following entry: "and thereafter, to-wit, on the third day of January, A. D. 1903, the court having denied the said motion to which ruling the defendant at the time excepted, leave was given the said plaintiff up to and including the first day of the next ensuing term of the court within which to reduce his objections and exceptions to writing, and file a bill of exceptions herein." It will be observed that the bill of exceptions recites the fact of the denial of the motion and an exception thereto. We think this is all that is required. It is unnecessary to incorporate in the bill of exceptions a copy of the journal entry overruling the motion. The motion to strike is denied.

The legality of the mortgage is attacked for the reason that it is not witnessed. Revised Statutes, Section 2741, as amended by Session Laws of 1905, Chapter 24, requires that deeds, mortgages or conveyances of land shall be executed in the presence of one witness. This requirement, like the acknowledgment, is necessary to admit the instrument to record, but does not affect its validity as between the parties. "An instrument for the conveyance of land that is not witnessed, where the statute requires it, is not a legal instrument, but may be enforced in equity." (Jones on Mortgages, Sec. 82.) The mortgage in this case is upon real estate situated in this state, and is, therefore, subject to the statutes of this state relating to its execution. (Wharton on the Conflict of Laws (3d Ed.), Sec. 276b.) This is an equitable proceeding in foreclosure. The mortgagor and the mortgagee are the parties to the action, and the mortgagor cannot now be heard in a court of equity to defend against his conveyance, otherwise properly executed, solely because it is not witnessed. It is an equitable mortgage at least between the original parties. (Frank v. Hicks, Trustee, 4 Wyo., 502.)

That the note and mortgage in question were without any legal consideration was the chief defense interposed by the defendant in the trial court. It is claimed that the note and mortgage were given to the plaintiff as trustee for E. Gauthier & Co., a firm of stock brokers doing business in the State of California, of which firm the plaintiff was a member, to secure said firm for stocks purchased for the defendant on margins or for future delivery. On this point there is a sharp conflict in the evidence, but we think the evidence sustains the allegation of the answer to the effect that the note and mortgage were executed to the plaintiff as trustee for the firm of Gauthier & Co., and that no money actually passed from the plaintiff to the defendant, as consideration for the execution of the note and mortgage; but that the difference between the first and second mortgages and the second and third mortgages, after

the cancellation of the first and second mortgages, respect-
ively, was either credited to the account of the defendant
on the books of Gauthier & Co. for the purpose of protect-
ing defendant's account with said firm in their stock
dealing transactions, or held as security therefor.

The mortgage in litigation is the last of a series of three
mortgages, and each of the previous mortgages became
merged in this one. It will, therefore, be necessary to con-
sider each of the mortgages and the transactions surround-
ing their execution. The first mortgage was executed to
Carl Weigleb three years before the defendant, according
to his own testimony and the undisputed evidence of all
the witnesses, had any dealings of any kind whatever with
the plaintiff. It is claimed, however, that this mortgage
was assigned by Weigleb to the plaintiff in payment of
margins on stock, and that the consideration for the as-
signment was tainted. Weigleb testifies that the considera-
tion for the assignment of the note and mortgage to Con-
radt was to protect the account of one Bachman, whom he
thought had dealings in stocks with the plaintiff. This
assignment was made, according to the undisputed evi-
dence of the witnesses in this case, more than eighteen
months before the defendant had any dealings whatever
with the plaintiff or the firm of Gauthier & Co. It does
not appear that the 'assignment had any connection what-
ever with any transactions between the plaintiff and de-
fendant, and it is not clear to us how this assignment from
Weigleb to the plaintiff can furnish any relief to this de-
fendant. So far as the record discloses, the consideration
for the mortgage between Weigleb and the defendant was
untainted, and so far as the defendant is concerned it is
immaterial what Weigleb did with the mortgage. It still
remained in the hands of the plaintiff, or any other legal
assignee, a valid lien against the property of the defendant.
The principle is well established that when the considera-
tion of a mortgage is made up of several distinct transac-
tions, some of which are legal and some of which are not,

and the one can be separated with certainty from the others, the mortgage may be upheld for such consideration as was free from the taint of illegality.   (Fellman v. Gamble, 26 N. J. Eq., 494; Williams v. Fitzhugh, 37 N. Y., 444; Corbett v. Woodward, 5 Sawyer, 403; Carradine v. Wilson, 61 Miss., 573; Warren v. Chapman, 105 Mass., 87; Shaw v. Carpenter, 54 Vt., 155 (41 Am. Rep., 137.)   It was held in Williams v. Fitzhugh, *supra,* that in equity a mortgage usurious in part, but valid in part, may be upheld for the latter, although the statute of usury makes the mortgage altogether void.   So much, therefore, of the consideration for the mortgage in litigation as is represented by the original mortgage to Weigleb at the time of its satisfaction by the plaintiff June 23d, 1891, when it became merged in the two thousand dollar mortgage of that date, together with the interest thereon, is untainted by reason of any illegal transactions that may have occurred between either the plaintiff or E. Gauthier & Co. and the defendant, and there can be no question as to the plaintiff's right to recover to that extent.

As to the two thousand dollar mortgage, plaintiff testifies that he paid the defendant one hundred and fifty dollars in cash, being the difference between the amount due on the mortgage to Weigleb and the one for two thousand dollars. Defendant testifies that he never received a cent, but that the difference was applied by the plaintiff to make up the defendant's marginal losses to Gauthier & Co.

As to the mortgage in question, plaintiff testifies that the fifteen hundred dollars of consideration, remaining after the cancellation of the second mortgage, was paid to the defendant in coin, twenty dollar gold pieces.   The defendant again testifies that he never received a cent of money from the difference between the first and second and the second and third mortgages, but that it was placed to his credit on the books of Gauthier & Co. to protect his account in the stock dealing transactions.   As before stated, on this point we think the District Court was justified in holding with the defendant.

It is important to determine the forum in which the validity of the consideration for the mortgage in question must be determined. The note and mortgage were executed in the State of California, but no place of payment was designated in the note or mortgage. The parties all resided in that state and the obligation must be considered as payable at the place of its execution. Defendant contends that the mortgage is merely security for the payment of the note and as such is an incident of the note, and that the whole transaction comes within the inhibition of Section 26, Article 4, of the constitution of California, which provides as follows: "All contracts for the sale of shares of the capital stock of any corporation or association, on margins or to be delivered at a future day, shall be void, and any money paid on such contract may be recovered by the party paying it by suit in any court of competent jurisdiction." It is contended, on the other hand, that this is an action to foreclose a mortgage and to subject the real property to the satisfaction of the debt, and that the *lex rei sitae,* or the law of Wyoming, where the real estate is situated, governs. It is urged that, as the statute of Wyoming, declaring gambling transactions void, does not include by direct inhibition the dealing in corporate stocks on margins or for future delivery, the contract between the defendant and his brokers was as legitimate and valid as any other contract relating to the purchase and sale of personal property. We are of the opinion in this case that the *lex loci contractus,* or the law of California, where the contract was made and was to be performed, governs, and it is, therefore, unnecessary for us to consider the application of the law in this state to the contract in question. It is a well settled principle of law that title to real property must be acquired agreeably to the law of the place where situated. This principle applies to mortgages as well as to absolute conveyances. It is likewise well established that the validity of a mortgage and the rights of the parties must be determined by the law of the state where the

mortgage property is situated, and this is true regardless of where the deed may have been executed or the mortgage debt made payable. (Oregon and Washington T & I. Co. v. Rathbun, 5 Sawyer, 32; Bently v. Whitmore, 18 N. J. Eq., 366; Goddard v. Sawyer, 9 Allen, 78; Lyon v. Mc-Ilvane, 24 Ia., 9; Smith v. Smith, 174 Ill., 52; 43 L. R. A., 403.) The general proposition, however, that the disposition of real property by contract is governed by the *lex rei sitae* applies only in so far as it relates distinctively and primarily to real property. The general rule is modified when the pledge or mortgage of land is merely security for and subsidiary to a personal contract. In such case, while the mortgage or pledge cannot be enforced or the land subjected to the payment of the debt, except by the court having legal jurisdiction, it is otherwise with regard to a contract which is governed by the law of the place in which such contract is both made and to be performed. While it is also true that all questions concerning the mode or manner of the solemnization of an executed contract, by which an interest in, or title to, real property is created or transferred, including attestation by witnesses, seal, acknowledgment, delivery and registration, are to be referred exclusively to the *lex rei sitae,* without regard to the domicile of the parties, the place where the instrument or contract was executed, or any other circumstances whatever; a different rule obtains when the validity of the consideration is under investigation. "Questions affecting the consideration are to be determined by the *lex loci contractus,* and this applies to the consideration of a deed or mortgage." (Wharton on the Conflict of Laws, Sec. 276b.) A case in Alabama in which the validity of a mortgage upon real estate was involved, where the mortgage was given to protect losses incurred in dealing in cotton futures, the court said: "We deem it unnecessary to discuss the axiom that, in the absence of a qualifying element, when a contract is both made and to be performed in the same state, the law of that state will govern its nature, obligation and

interpretation. This rule determines that the law of Georgia governs the present note, and, considered as a security merely, the mortgage." (Peet v. Hatcher, 112 Ala., 514; 57 Am. St. Rep., 45; 21 So. Rep., 711.) In the case at bar the note is the evidence of the personal contract between the parties. The consideration attaches to the personal contract which was both made and to be performed in California. The mortgage was merely given as security for the payment of the note. The validity of the consideration must, therefore, be determined according to the law of California, and is subject to all the restrictions that the constitution or laws of that state impose.

It is important to consider the application of the provision of the constitution of California above cited to this case. It appears from the record that the defendant, for a number of years prior to the commencement of any transactions between himself and the plaintiff, had been dealing in stocks on the board of trade in San Francisco, carrying an account with different firms of stock brokers, and frequently transferring his account from one firm of brokers to another. On December 10, 1890, he transferred his account from Refish & Co., a firm of stock brokers with whom he had been doing business, to Gauthier & Co. In order to secure the stock that Refish & Co. held as security for the balance owing them by the defendant, Gauthier & Co. advanced for the defendant to Refish & Co. the sum of $665.55 and took the stock then held by Refish & Co. as security for this advancement, the certificates for such stock being delivered to Gauthier & Co. at this time. From this time on until the defendant closed his account with Gauthier & Co. stocks were bought and sold by Gauthier & Co., from time to time, at the request of and on the account of the defendant. On July 20, 1891, Weigleb, who had also an account in stock transactions with Gauthier & Co., transferred his account to the defendant. The stock held for Weigleb was credited on the books of Gauthier & Co. to the account of the defendant, Lepper, Gauthier & Co. at

the same time charging Lepper's account with $2,237.50, the balance due them from Weigleb on his account, and crediting Weigleb's account with that amount, thus closing the account of Weigleb. It also appears that, from time to time, Gauthier & Co. paid assessments upon stock held by them on account of the defendant, and advanced to the defendant certain sums of money in cash, the sums advanced amounting in the aggregate to forty-seven dollars. For the cash thus advanced to the defendant, Gauthier & Co. should have credit upon any accounting had regarding these transactions. On August 10, 1891, the defendant closed his account with Gauthier & Co., and Gauthier & Co., upon the order of the defendant, delivered over to Fritsch & Co., another firm of brokers to whom the defendant transferred his account, all the stocks remaining in their hands which they had bought for the defendant, or received from the transfer of the Weigleb account, or originally received from Refish & Co. There was an actual delivery of the stock from Gauthier & Co. to Fritsch & Co. Upon the delivery of the stock, Fritsch & Co. advanced to Gauthier & Co. the sum of $1,731.10, being the balance owing by the defendant to Gauthier & Co., for which the stock so delivered was held as security.

In many states, in transactions similar to those involved in this case, the broker is held to be the agent of the customer; but in California the courts hold that the relation between the broker and customer is that of vendor and vendee. (Cashman v. Root, 89 Cal., 373; 26 Pac., 883.) In interpreting the provision of the constitution of California, now under consideration, our conclusions must of necessity be governed by the construction placed upon it by the courts of that state. Assuming, for the purposes of this case, that the relation between Gauthier & Co. and the defendant was that of vendor and vendee, we are of the opinion that a portion of the transactions between the defendant and Gauthier & Co. do not constitute dealing in stocks on margins or for future delivery. It appears that a

portion of the stock received from Refish & Co. and from the transfer of the Weigleb account, as well as that pur-chased upon the order of the defendant, was actually delivered to the defendant's brokers on August 10, 1891, when the defendant closed his account with Gauthier & Co. The defendant could not have recovered any advances on account of the stock actually delivered to him or to his agents or brokers at his request. The delivery not only cured any illegality that may have existed prior to that time relative to the stock so delivered, but Gauthier & Co. would be entitled to credit for any money advanced by them upon the stock so delivered, either as purchase price, commission, assessments, or interest thereon. We think this is the interpretation, by inference at least, placed upon the above provision of the constitution of California by the courts of that state. In Sheehy v. Shinn, 103 Cal., 373 (37 Pac., 393), a leading case on this subject, marginal transactions are defined as follows: "The meaning of the word 'margins,' as ordinarily used in connection with stock sales, has long been well understood. As most frequently employed in this state at the time of, and for many years prior to, the adoption of the constitution, it meant the sum deposited by a purchaser of stock with his broker, being a certain percentage of the purchase price of the stock, the broker agreeing to advance the balance of the purchase price upon condition that he should hold the stock as security for his advances, with the right to sell it in case of depreciation of value, and failure of the purchaser to keep the margin good. This, we say, was the sense in which the word was most frequently employed, but it was also employed to describe deposits made by sellers and purchasers of stock for future delivery upon a variety of conditions, and in various ways, which need not be considered here. It is enough for all the purposes of this case to say that whenever the purchaser of stock paid to the vendor of the stock, or to his broker, a percentage of the purchase price upon an agreement that the stock should be held as security for the balance, the amount so paid was 'margin'

in the sense in which the term was used by the framers of
the new constitution." It seems that the evil sought to be
remedied in California was not the purchase and sale of
stocks through agents or brokers, but the wagering upon
the market values of stocks without any actual delivery or
transfer of the certificates. The court in the same case took
occasion to define, to some extent, what constitute legitimate
transactions in stocks. On this point the court said: "We
are, at the same time, convinced that it involves none of the
mischiefs which counsel insist will flow from it. It will not
prevent any legitimate transfer of stock, whether through
the agency of a broker or otherwise, nor will it prevent any
legitimate and *bona fide* pledge of stock certificates as se-
curity for borrowed money, whether borrowed for the pur-
pose of paying for the stock, or any other purpose. Where
such is not only the form, but the substance of the transac-
tion, the inhibition of the constitution does not apply." In
the same case the court affirmed the judgment of the trial
court, and in attempting to ascertain the method applied by
the trial court in arriving at the amount due, evidently con-
sidered that stock paid for and delivered to the customer
relieved the broker from any liability for the money ad-
vanced on the stock so delivered, for the court said: "As a
simple matter of bookkeeping, the balance seems to us to be
$1,593.35, but the right of plaintiff to demand that amount
is not so clear. The findings show that defendant purchased
340 shares more than he sold, and also that, for some shares
plaintiff made full payment, and received the certificates.
It is entirely consistent with the findings to assume that the
price of these full paid shares makes up the difference be-
tween the balance claimed and the amount allowed by the
Superior Court, viz, $602."

We think the weight of authority sustains the view that,
even though stock is purchased upon margin, if the cus-
tomer on whose account the stock is purchased afterwards
pays the broker the amount of advancements he has made,
and for which the broker holds the stock as a pledge or

security, and receives the certificates of stock, that it then becomes a legal and valid transaction in its entirety, and no action will lie against the broker to recover back the money on the stock so delivered. This seems to be the rule adopted by the Supreme Court of California in Sheehy v. Shinn, *supra*. A similar rule is followed in Pennsylvania. In Lex's Appeal, 192 Pa. St., 313 (43 At., 975), Mr. Justice Mitchell, after discussing the evidence tending to show the matter under consideration to be a gambling transaction, said : "But, apart from this consideration, the evidence clearly showed an election by the appellant to treat the last transaction as a purchase (all previous ones being closed), and to settle the account on that basis. Under Peters v. Grim, 149 Pa. St., 163 (24 At., 192) ; Repplier v. Jacobs, 149 Pa. St., 167 (24 At., 194) ; McNaughton v. Haldeman, 160 Pa. St., 144 (28 At., 647) ; Anthony v. Unangst, 174 Pa. St., 10 (34 At., 284), this made it valid, whatever had been its original character." In Young v. Glendenning, 194 Pa. St., 562 (45 Atl., 364), a similar principle is announced by the court in discussing a case involving stock transactions. "No matter what the character of the dealings between Graham and Glendenning & Co., or Huhn and Glendenning, their successors, when the transactions had ended, Graham settled with both firms . . . and took up all his stocks. The last settlement was on the 22d of April, 1896, more than eighteen months before this bill was filed. . . . It will be noticed from the testimony that in every instance the brokers, in the purchase and sale of stocks, acted as the agents of Graham, and in every case there was an actual sale, purchase and delivery. Therefore, whatever may have been the nature of the previous transactions as to Graham he finally legitimated them all, by paying his indebtedness and departing with his stocks." A similar rule is followed in New Jersey. (Sharp v. Stalker, 63 N. J. Eq., 596.) This seems to be a reasonable rule and one that conforms to every principle of equity. It would be a harsh doctrine to announce that a customer could procure advances on stocks from brokers,

pay the balance due, take the stock, and then bring an action and recover the full amount paid the broker. This would be unfair, unreasonable and unjust. We are of the opinion, therefore, that when the defendant, through his brokers, Fritsch & Co., paid the balance due on the stock to Gauthier & Co. on August 10, 1891, and took the stock, that it legalized all transactions between Gauthier & Co. and the defendant, Lepper, relative to the stock so delivered.

The trial court found generally for the defendant without stating any conclusions either of law or of fact. Evidently the court held that the entire consideration for which the mortgage was given went to secure the account of the defendant with Gauthier & Co., and that such account was in its entirety void, as constituting purchases of stock on margins or for future delivery. As we have already suggested, the court was justified in finding from the evidence that that portion of the consideration of the mortgage in question, which was not embraced in the original mortgage to Weigleb, was given to secure defendant's account with Gauthier & Co., and that so much of said account, so secured, as constituted marginal stock transactions was void, which to that extent would render the consideration for the mortgage void. The court erred in holding void the entire account of defendant with Gauthier & Co. For the reasons stated in this opinion, that portion of the consideration represented by the amount embraced in the original mortgage to Weigleb constitutes a valid charge against the defendant; all proper and reasonable charges on account of stock purchased for the defendant and subsequently delivered to him or to his brokers by his direction constitute valid charges against the defendant; any money advanced by Gauthier & Co. to Refish & Co. for the defendant on December 10, 1890, at the time that the account was opened, together with such interest thereon as the law would allow, after deducting the proceeds of that portion of the stock received from Refish & Co. which was sold by Gauthier & Co. and placed to the credit of the defendant, constitutes a valid

charge against the defendant; and all cash advanced to the defendant individually by Gauthier & Co. constitutes a valid charge against the defendant. A portion of the account consists of stock bought and sold by Gauthier & Co. without any delivery to the defendant. To the extent that the account may exhibit any indebtedness from the defendant upon such transactions, it must be held void, and to that extent it will not furnish a valid consideration for the mortgage. The defendant, in a proper action, would have been entitled to recover all advances made with respect to such transactions, and hence so far as the mortgage was given to secure any indebtedness growing out of such transactions, either in the present or future, it must be treated as illegal and void.

As the judgment must be reversed and the cause remanded for a new trial, it is proper to say that it will be the duty of the court upon another trial to ascertain the amount of the valid indebtedness of the defendant to Gauthier & Co., for which the mortgage was in part given as security. We think it will be necessary to take further evidence in order to arrive at a correct determination of that matter, for the reason that the evidence introduced at the former trial was not taken upon this theory. The plaintiff's case was evidently presented upon the theory that he had actually loaned the money to defendant independent of his dealings with Gauthier & Co., and further that none of such dealings were void; while the defendant's case was presented upon the theory that his entire account with Gauthier & Co. was void. For this reason the evidence fails to explain many matters which may be found material to the inquiry herein suggested.

The judgment of the District Court is reversed and the cause remanded for a new trial. *Reversed and remanded.*

POTTER, C. J., and BEARD, J., concur.

ON PETITION FOR REHEARING.

VAN ORSDEL, JUSTICE.

This cause was heretofore decided by this court. (81 Pac., 307.) A petition for rehearing was filed, together with a

brief in support thereof.  Upon an examination of the peti-
tion and the brief of counsel, we find nothing presented that
was not carefully considered by the court in preparing the
former decision.  It is contended that the case was decided
in this court upon a different theory than that relied upon by
either plaintiff or defendant in the trial court, and that de-
fendant was thereby taken by surprise and not given an
opportunity to be heard by counsel in this court upon the
theory here adopted.  It is sufficient to say that defendant
was given full opportunity to be heard, and the case was
ably and fully argued by counsel who then represented him
in this court.  The facts as disclosed by the record sustain
the conclusions reached in our former opinion.  As therein
suggested, it may require additional evidence to assist the
trial court in reaching a proper conclusion.  If the facts are
different from those disclosed by the present record, and
defendant has proceeded upon a misapprehension of the law
applicable to his case, the door is now open for him to pro-
tect his rights and to correct this error by supplementing the
present record with any evidence he may have to offer upon
a new trial.                                    *Rehearing denied.*

POTTER, C. J., and BEARD, J., concur.