THE OHIO OIL COMPANY,
*Plaintiff and Respondent,*

vs.

THE WYOMING AGENCY, a Corporation, L. S. Strahan, Individually and as Trustee, et al.,
*Defendants,*

L. S. STRAHAN,
*Defendant and Appellant.*

(No. 2339; April 15th, 1947; 179 Pac. 2d. 773)

188

190

For the Defendant and Appellant, the cause was submitted upon the brief of L. S. Strahan of Lovell, Wyoming, appearing, pro se.

For the Plaintiff and Respondent, the cause was submitted upon the brief and also oral argument of W. H. Everett and M. L. Bishop, both of Casper, Wyoming.

192

194

## OPINION

KIMBALL, Justice.

This is an appeal from a judgment quieting plaintiff's title to the mineral estate or interest in 80 acres of land in Big Horn county. There were several defendants, but all disclaimed or defaulted, except appellant who hereafter will be called defendant.

The pleadings may be summarized briefly. The petition alleges that by various transfers and conveyances, plaintiff became, and is now, the owner of all minerals in the land, and entitled to the immediate possession thereof with the right to prospect, mine and operate therefor; defendant claims some interest in said minerals adverse to plaintiff, and the claim is a cloud on plaintiff's title. The prayer is that defendant be required to set out his claim to the end that it be declared that he has no interest in said minerals; that he be restrained from setting up any claim thereto, and that the title be quieted in plaintiff.

In the answer defendant denies that plaintiff has any interest in the property in question; alleges that defendant is the owner in fee simple of said minerals either by various conveyances, or by adverse possession.

In July 1919, by deed recorded in October 1919, Cotner, then owner of all interests in the land, conveyed

the surface estate to Carl J. Arnoldus. The deed, in which Cotner's wife joined, provides that the grantors "reserve to themselves, their heirs and assigns, all the minerals, mineral deposits, mineral oils and natural gases of every kind and nature contained in or upon said lands, the surface of which is hereby conveyed," and defines the rights and duties of the parties with respect to the use of the surface of the land in prospecting, mining and drilling operations. It is admitted that a severance of the mineral estate from the surface estate was effected by this conveyance. See Tiffany on Real Property (3d ed.) § 587; Lindley on Mines (3d ed.) §§ 9, 812; cases cited in State ex rel. Cross v. Board of Land Com'rs., 50 Wyo. 181, 200-203, 58 P. 2d 423, 429-430. The mineral estate, after severance, is often called the "mineral fee" (see Dabney-Johnston Oil Corp. v. Walden, 4 Calif. 2d, 637, 650, 52 P. 2d 237, 243), and that term has been used by the attorneys, and sometimes will be used by us, in speaking of the property interest or estate involved in the case.

By a deed dated August 7, 1919, recorded August 11, 1919, the Cotners conveyed the mineral fee to the Occidental Oil and Gas Company, whose title under that conveyance is not questioned.

The next instrument in plaintiff's chain of title is an "agreement of merger and consolidation," dated June 19, 1923, introduced for the purpose of showing that the title passed from Occidental to the Teton Gas Products Company, plaintiff's immediate grantor. This instrument purports to effect a merger or consolidation of Teton, Occidental and two other corporations, all organized and existing under the laws of Delaware. The instrument was proved by a copy showing that the agreement was approved by all stockholders, and that the original instrument, signed and acknowledged on behalf of the four corporations by their officers, was

filed with the Secretary of State of Delaware, and that later, on July 7, 1923, a certified copy was filed and recorded in the office of the Register of Deeds of Big Horn county, Wyoming. It was provided among other things that: "The four corporations, parties hereto, are hereby consolidated and merged into a single corporation, to wit: said Teton Gas Products Company, which shall be the name and title of said consolidated and merged corporation (herein called the 'consolidated corporation')," and that: "All property, real, personal and mixed, of the respective corporations, parties hereto, * * * shall vest in the consolidated corporation."

The instrument was received in evidence over defendant's objection that there was nothing to show the corporate capacity of the parties to the agreement. In contending in this court that the objection should have been sustained, defendant says that the instrument "is something or nothing according to the laws of Delaware. It is unknown to the laws of Wyoming. Here it would not constitute a merger of corporations. The burden was on respondent (plaintiff) to show that it does constitute a merger, change of name or what not under the laws of Delaware. Respondent offered no such proof." It is true that the authority of Delaware corporations to merge depends on the laws of Delaware, and we shall assume that the objection at the trial was sufficiently definite to inform the judge and plaintiff that defendant was calling for evidence of the laws of Delaware to show such authority. The merger agreement purports to have been authorized by, and executed in accordance with, the laws of Delaware, and we think that defendant, a stranger to the corporations, could not question the title of Teton under the merger agreement on the ground that the merger was ultra vires. See Fletcher on Corp. (Perm. ed.) § 3448; 13 Am. Jur., Corporations, § 759, et seq.; 19 C. J. S. Cor-

porations, § 981; McDonald v. Mulkey, 32 Wyo. 144, 161, 231 Pac. 662, 667.

If we should concede that it was the duty of plaintiff to meet defendant's objection by showing that the merger was authorized by the laws of Delaware, we should under the Uniform Judicial Notice of Foreign Law Act (sec. 3-3109, et seq. C. S. 1945), in accordance with our holding in Trepanier v. Standard M. & M. Co., 58 Wyo. 29, 38, 123 P. 2d 378, 380, in order to avoid a new trial for error that is not prejudicial, take judicial notice that the laws of Delaware, in effect at the date of the merger agreement, did authorize such a merger. Revised Code of Del., 1915, Ch. 65, Sec. 59, 60, which (with amendments of 1927 and 1929 that did not limit the authority) are quoted in full in Drug v. Hunt, 5 W. W. Harr. 339, 168 Atl. 87. Section 60, as it appeared in the Code of 1915, provided, among other things, that, as the effect of consolidations or mergers, "the separate existence of the constituent corporations shall cease, and the consolidated corporations shall become a single corporation in accordance with said agreement," and "all property, real, personal and mixed * * * shall be vested in the consolidated corporation."

The mineral fee was conveyed by Teton to plaintiff by deed dated September 8, 1930, acknowledged on the same day, and recorded in Big Horn County on October 20, 1930. At that time the statute provided that a conveyance of land should be executed in the presence of one witness who should subscribe as such (§ 97-114, R. S. 1931), and a deed not so witnessed was not entitled to record. State ex rel. Nash vs. Cowhick, 9 Wyo. 93, 60 P. 265; Conradt v. Lepper, 13 Wyo. 473, 485, 80 P. 307. The deed was proved at the trial by production of the book in which it was transcribed in the office of the Register of Deeds. It is shown in the record on appeal by a photographic copy

of the original. There is no witness to the grantor's signature, and the defendant objected to the evidence on that ground. The argument of the objection here is that the deed without a witness is void, and that its record did not impart constructive notice of its existence. The objection does not question the copy as being incorrect, or as being insufficient to show that the original was signed and acknowledged.

Defendant argues at length, and cites cases from other jurisdictions, in support of his contention that a deed not witnessed as required by statute is void. But that is not an open question in this state. In Whalen v. North Platte Canal & Colonization Co. 11 Wyo. 313, 348, 71 P. 995, 999, an informal conveyance of a water right was attacked on the ground that it was not acknowledged, and after a careful consideration of statutes, which with no material changes continued in effect through 1930 (§§ 97-104, 97-114, 97-135, 97-205 R. S. 1931), it was held that the absence of an acknowledgment did not prevent the passing of title. In Conradt v. Lepper, 13 Wyo. 473, 485, 81 P. 307, 308, it was said that the requirement of a witness, "like the acknowledgment, is necessary to admit the instrument to record, but does not affect its validity as between the parties."

It is stated several times in defendant's brief that the recording of the deed which was not entitled to record, gave defendant no constructive notice thereof. We may assume that that is so (Frank v. Hicks, 4 Wyo. 502, 513, 35 P. 575, 477), but we cannot see that notice or lack of notice of this deed has any bearing on any issue in the case.

We are of opinion that plaintiff's evidence was sufficient to prove its title to the mineral fee by the conveyances noticed above. We think it is conceded that neither plaintiff nor any one else has done any mining

or drilling on the land, and that the presence or absence of minerals is a matter of speculation. Plaintiff, however, has returned the mineral fee for assessment for taxation, and paid taxes thereon, commencing with the year 1933.

Evidence offered by defendant at the trial was excluded. A tax deed based on a sale of the land for delinquent taxes for the year 1924 was excluded when plaintiff objected on the grounds, first, that it had been held by this court that the assessment roll of Big Horn county for the year 1924 was invalid as the basis for a sale of the taxed property (see Brewer v. Kulien, 42 Wyo. 314, 294 P. 777), and, second, that there was no showing that the mineral fee had been assessed or taxed. The deed probably should not have been rejected on the first ground. Defendant was not a party to Brewer v. Kulien, supra, and a statute passed in 1941 makes tax deeds prima facie evidence of title. But in view of the contentions here, we do not think the exclusion of the deed was prejudicial. Defendant does not claim that the decision in Brewer v. Kulien would not apply to the facts in this case. He says that he succeeded to the rights of the purchaser at the tax sale without knowledge of the invalidity of the sale, and before the decision in the cited case. That seems to be immaterial. In regard to the second ground of objection, the record shows that the mineral fee was never separately assessed until 1933, and there seems to be no reason to suppose that undiscovered minerals were valued or in any way considered in assessing the land in the name of the owner of the surface in 1924. Under Wyoming statutes and decisions property must be assessed in the name of the true owner, if known. Hecht vs. Bougton, 2 Wyo. 385, 400; McCarthy v. Union Pac. Ry. Co., 58 Wyo. 308, 131 P. 2d 326. When the mineral estate is owned separately from the surface estate, and the land is assessed in the name of the owner of the

surface, it would seem that even a valid tax sale will not carry the mineral estate. Washburn v. Gregory Co., 125 Minn. 491, 147 N. W. 706, L. R. A. 1916 D. 304; Sims vs. Vosburg, 43 N. Mex. 255, 91 P. 2d 434; Kernkamp v. Wellsville Fire Brick Co., 237 Mo. App. 457, 170 S. W. 2d 692.

Defendant asserts that plaintiff lost title to the mineral fee in the year 1932 by sheriff's deed pursuant to a sale ordered by the judgment in an action by Sidon Canal Company against Carl I. Arnoldus and others, which we shall call the Sidon case.

The petition in that case, filed June 2, 1927, shows that Sidon owns a canal and furnishes water for irrigation and domestic purposes to its stockholders owning irrigable lands lying under the canal; funds necessary to pay costs of operation, maintenance etc. of the canal and irrigation system are raised by yearly assessments levied on the capitol stock of Sidon, and said assessments become a first and best lien on "the land and on the water right thereto lying under the said canal." Defendant Arnoldus is the owner or supposed owner, as shown by the records of the County Clerk of Big Horn county, of 280 acres of land (including the 80 acres involved in the case at bar) lying under said canal, and also owns shares of stock "for the purpose of obtaining water for irrigation and domestic purposes" for said land. Assessments, as mentioned above, for the years 1923 to 1927 have been levied upon the land belonging to Arnoldus, and the amount thereof, total $1115, is due and delinquent. The prayer is for judgment for that amount with interest, and that in default of payment "the land and water right thereunto be sold as upon execution for the payment of the lien and judgment."

In the Sidon case there were several other defendants besides Arnoldus, including Ohio, plaintiff in the

present case, and Occidental. Sidon alleged that those defendants had or claimed some interest in the land, but their interest, if any, was inferior and subject to the claim and lien of Sidon.

Ohio answered by general denial. At that time it had no interest in the mineral fee, and the judgment recites that it had "entered a disclaimer and withdrawn from the case." Occidental in its answer, filed January 8, 1928, alleged that since 1919 it owned the minerals underlying a 40-acre tract described in the petition (part of the mineral fee involved in the present action). Thereupon, Occidental was dismissed from the case. Teton, successor to Occidental, and having at least the equitable title to the mineral fee from 1923 to 1930 under the merger agreement above referred to, was not a party to the Sidon case, but on September 8, 1930, before the judgment in that case was entered, it conveyed to Ohio, a defendant in that case and plaintiff in the present case.

The Sidon case was heard in the District Court in May 1929, but judgment was not rendered until January 1931. The court found that Arnoldus was indebted to Sidon in the amount of the assessments, and that the lien of Sidon "is for unpaid water assessments under the Carey Act project," which includes the land described in the petition, and is "a first, best and prior lien * * * superior to the claims, rights and interest of all defendants in said cause except defendant, Occidental Oil and Gas Company." There was a money judgment against Arnoldus for the amount of the assessments, which was declared to be a first lien against the land. If the judgment were not paid in five days, plaintiff was authorized to have the land sold as upon execution, and it was declared that the purchaser "shall acquire all of the right, title and interest whatsoever of all of the defendants".

The Sidon case was brought to enforce the lien authorized by section 792, C. S. 1920, now section 24-420, C. S. 1945. It is there provided that companies operating "devices for the distribution of water for irrigation" are authorized to levy and collect assessments for the cost of operation, maintenance etc. of the irrigation works. Payment of the assessments are "the necessary requisite" for the use of the irrigation works for the irrigation of "the lands deeded or described in contracts for or deeds to proportionate interests" in such irrigation works. Such companies "shall have a lien upon the proportionate interest in such reservoirs, irrigation systems and ditches, (which) shall become a first lien upon the lands deeded or described in contracts for or deeds to such proportionate interests for the amount of any unpaid assessments which may be enforced in a court of competent jurisdiction, as in the case of other liens. * * * This section shall include all lands under any of the above named systems if water has been used or is being used in any one irrigation season providing that water is in said canal, reservoir or ditches, subject to use of owners."

We think it clear that the lien of Sidon under this statute did not attach to the mineral estate which had been severed from the surface estate before the assessments were made. The owner of the mineral state had no "proportionate interest" in the Sidon Canal, and owned no land irrigable therefrom. The mineral fee was "land" (State ex rel. Cross vs. Board of Land Com'rs., 50 Wyo. 181, 199-201) but not the land upon which Sidon had a lien under the statute. We would, of course, have a different case if the assessments had been levied against the owner of the land before the severance of estates. After severance, the two estates, owned separately, are held by separate and distinct titles. This has been emphasized in the cases. It has been said that the two estates are "as distinct as if they

constituted two different parcels of land." Beulah Coal Mining Co. v. Heihn, 46 N. D. 646, 655, 180 N. W. 787, 790, quoting from 18 R. C. L. 1184, 1 Am. Jr. 858. It is not material that the plane by which the properties are separated is horizontal instead of vertical. Tiffany on Real Property (3d ed.) § 1158, p. 470. After the owner of the separated mineral estate records his title, he "is not affected by the state of the title to or possession of the surface." Algonquin Coal Co. v. Northern Coal & Iron Co., 162 Pa. 114, 118, 29 Atl. 402. "Each estate may be occupied, conveyed, encumbered, sold, by the sheriff, or alloted in partition, without any effect upon the other." Delaware & H. Canal Co. v. Hughes, 183 Pa. 66, 38 Atl. 568, 38 L. R. A. 826.

The effect of the judgment in the Sidon case must be determined in the light of the statute and of the issues in that case. The word "land" throughout the proceeding means the land subject to Sidon's lien. Sidon was not interested in the mineral fee, and its petition could raise no issue as to the title of any property not burdened by the lien for assessments.

Parties, other than Arnoldus, who were in the case as defendants, were not called upon to defend their title to the mineral fee. This evidently was the theory in the trial court when Occidental was dimissed from the case after it alleged its ownership of minerals underlying forty acres of the land. The record in the Sidon case contains no reference to the mineral fee, except in connection with the claim asserted by Occidental. The declaration in the judgment that the lien for the amount of the assessments was prior and superior to the rights and interests of all defendants, and that the purchaser at the sale would acquire all right, title and interest of all defendants must be construed to mean only that it was determined that no defendant had any

right or interest in the land subject to the lien that was being foreclosed.

We hold, therefore, that the purchaser at the sheriff's sale in the Sidon case in 1932 acquired no interest in the mineral fee, and we assume that he did acquire the surface estate in the 80-acre tract involved in the present case. We may also assume, in accordance with an offer of proof made by defendant, that shortly after November 4, 1932, he became the owner of the surface estate; on November 14, 1932, he conveyed the surface to one Kane, and thereafter Kane and his grantees have been in possession of the surface estate.

Defendant contends, also, that he has title to the mineral fee by adverse possession beginning in 1930, when he obtained a deed from purchaser at the tax sale, and continuing even after 1932 while Kane and Kane's successors occupied the surface. There could have been no adverse possession of minerals that have never been worked or even discovered. The authorities are unanimous in holding that where the surface and mineral estates have been severed, possession of the surface by its owner, cannot be adverse to the owner of the minerals, and that there can be no adverse possession of the severed mineral estate in the absence of mining operations. The cases are collected in notes, 13 A. L. R. 375; 67 A. L. R. 1442; 93 A. L. R. 1232. The rule is not changed by the fact that no one knows what minerals are or are not present. Stowers v. Huntington Development & Gas Co., 72 Fed. 2d 969, 98 A. L. R. 536. It is immaterial that the surface occupant claims the minerals under a deed that conveys the land by its customary description without reference to mineral rights reserved by an earlier recorded deed. J. R. Crowe Coal & Mining Co. v. Atkinson, 85 Kan. 357, 116 P. 499; Renfro v. Hanon, 297 Ill. 353, 130 N. E. 740; 1 Am. Jur., Adverse Possession, § 119.

A question of procedure is raised by defendant's contention that an action to quiet title cannot be maintained by a plaintiff not in possession.

The code of procedure, in the article on real actions, provides that: "An action may be brought by a person in possession, by himself or tenant, of real property, against any person who claims an estate or interest therein, adverse to him, for the purpose of determining such adverse estate or interest." Sec. 3-7001, Wyo. Compiled Statutes 1945. Another section in the same article provides for an action for the recovery of real property by one who "has a legal estate therein, and is entitled to the possession thereof" against a defendant who "unlawfully keeps him out of the possession." Sec. 3-7003, C. S. 1945.

Plaintiff did not allege that it was in possession of the minerals, and the evidence, which showed that neither plaintiff nor defendant was in actual possession of the minerals or of the surface estate, did not justify an action to recover possession under Section 3-7003, the code substitute for common law ejectment.

Actions to determine adverse claims under Section 3-7001, and similar statutes in other states, are commonly called actions to quiet title, though the statute does not give them that name. It is not necessary that the adverse claim that may be determined under the statute should be of any particular character. Pomeroy on Equitable Remedies (2d ed.) § 739; Rhea v. Dick, 34 Oh. St. 420, 424, quoting from Head v. Fordyce, 17 Calif. 149, 151; Nichols v. Nichols, 20 F. 2d 474, 481 (Kansas statute). The statute provides that the action may be brought by a person in possession by himself or tenant, and there are many cases in which it is stated, without qualification, that "possession" in such a statute means actual possession or occupancy. But we think an examination of those cases, in the light of

other cases in the same jurisdiction, will generally disclose that the rule requiring actual possession by plaintiff is based on the availability of full protection to him through an action in ejectment or its statutory substitute. If the land is not occupied by any one, the plaintiff having title may sue to have his title quieted, either because the remedy exists independent of the statute (O'Brien v. Creitz, 10 Kan. 158; Livendale etc. Co. v. Fluke, 48 Okla. 480, 150 Pac. 481), or because his title gives him constructive possession (Thompson v. Woolf, 8 Ore. 454; Mitchell v. Titus, 33 Colo. 385, 80 Pac. 1042; Haban v. Suburban Home Mfg. Co., 40 Oh. L. Abstract 78, 57 N. E. 2d 97). In a recent case in Colorado, the facts in regard to possession were the same as in the case at bar. The court said: "In this case neither plaintiff nor defendant owns the surface of the two quarter sections covered by the Gray lease, and the only way in which any person could be in actual possession of the minerals under the surface would be through actual mining operations and workings—of which it is admitted there are none on the premises in question. Under such a situation we are of the opinion that constructive possession is sufficient for maintaining an action to quiet title". Rocky Mountain Fuel Co. v. Clayton Coal Co. 110 Colo. 334, 339, 134 Pac. 2d 1062, 1065. See, also, Britten v. Posey, 29 Pa. Co. R. 668, approved in Laidley v. Rowe, 275 Pa. 389, 119 Atl. 474; Graves v. Ashburn, 215 U. S. 331, 334.

The decisions, some stating that a plaintiff in an action to quiet title must be in actual possession, and others holding that actual possession is not necessary when no one else is occupying the land, can be reconciled and brought within the statute by giving the word "possession" as used therein the meaning suggested by Tiffany, who after stating that in spite of its practical importance from a legal point of view, the idea of possession appears peculiarly insusceptible of accurate de-

finition, continues: "We may say, however, speaking generally, that one is in possession of land when he is in occupation thereof, with the intention, actually realized, of excluding occupation by others, or when, although not in actual occupation, he claims the right of exclusive occupation, and no person is in occupation opposing his claim." Tiffany on Real Property, (2d ed.) § 14, (3d ed.) § 20.

A plaintiff who admittedly is not in possession of land, may have an adverse claim determined, in order to quiet his title, under principles stated in Chesney v. Valley Livestock Co., 34 Wyo. 378, 244 P. 216, 44 A. L. R. 1255, where it was said, among other things, that "a court of equity must not hesitate to protect property rights, where no relief can be granted in actions at law." See, also, the later case of Estate of Gilbert Smith v. Cohen, 123 N. J. E. 419, 196 Atl. 361.

Counsel have not asked us to notice the Uniform Declaratory Judgment Act (Sec. 3-5801, *et seq.* C. S. 1945) in this connection, but we think it is not improper for us to add that, after a trial of issues raised by pleadings showing a dispute over the title, we should not reverse the judgment which may be sustained under that act. An action to quiet title is essentially an action for declaratory relief. Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 462, 296 Pac. 206; Borchard on Declaratory Judgments (2d ed.) 139. It has been said that the act provides for "a kind of expanded bill quia timet, meant to do in general what that suit did in its limited field." Judge L. Hand in Meeker v. Baxter, 83 F. 2d 183, 187. That the purpose of the act "to settle and afford relief from uncertainty and insecurity with respect to rights" (Sec. 3-5812) may be carried out in actions not expressly based on the act, is shown by many cases. Hasselbring v. Koepke, 263 Mich. 466, 248 N. W. 869 (action to enjoin interference with a claimed easement) ; West

v. Chase, 92 N. H. 104, 25 Atl. 2d 688 (petitition for construction of a will) ; Moore v. Moore, 147 Va. 460, 137 S. E. 488 (petition for mandamus) ; Mason & Mason v. Brown (Tex. Civ. App.) 182 S. W. 729 (action to annul provision of a will) ; Southeastern Greyhound Lines v. Knoxville, 181 Tenn. 622, 184 S. W. 2d 4 (action to enjoin collection of taxes) ; Hess v. Country Club Park, 213 Calif. 613, 2 P. 2d. 782, (action to annul building restrictions) ; Teal v. Maxon, 233 Ala. 23, 169 So. 477 (action to quiet title to land not in plaintiff's possession). In Renwick v. Hay, 90 N. J. Eq. 148, 106 Atl. 547 (noticed in Holly Sugar Corp. v. Fritzer, 42 Wyo. at 464, 296 Pac. at 210), a suit to determine rights in private ways, it was held that relief might be granted by considering the case either as one in equity or as one under the declaratory judgment act. In Faulkner v. Keene, 85 N. H. 147, 156, 155 Atl. 195, 201, it is stated that "The cause being plainly presented to the court, the appropriate remedy will be granted however erroneously the proceeding be entitled." See, also, Borchard on Declaratory Judgments, pp. 427, 741.

Other and minor contentions of defendant have been considered, but are not discussed herein, as they do not seem to raise any question of error affecting the merits.

*The judgment will be affirmed.*

RINER, Ch. J., and BLUME, J., concur.