**CONTINENTAL OIL COMPANY, a corporation, Plaintiff,**

v.

**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, a corporation, and Elliott Construction Company, Inc., a corporation, Defendants.**

**Civ. No. 3953.**

United States District Court
D. Wyoming.

Feb. 5, 1957.

---

W. J. Wehrli, Houston G. Williams, Casper, Wyo., A. T. Smith and F. E. Radloff, Denver, Colo., for plaintiff.

Neely, Otis & Neely, Omaha, Neb., R. R. Rose, Jr., Casper, Wyo., Nye F. Morehouse, Chicago, Ill., and Phinney & Hallman, Dallas, Tex., for defendants.

KERR, Judge.

This controversy involves a strip of land 200 feet wide (railroad right of way) lying within a proven oil field in Converse County, Wyoming.

For the sake of brevity I will refer to the Continental Oil Company, a corporation, as "Continental", the Chicago and North Western Railway Company, a corporation, as "Railway Company"

and Elliott Construction Company, Inc., a corporation, as "Elliott".

A summary of the pleadings is essential to an understanding of the issues.

Continental brings this action to recover complete possession of the N½ NW¼, Section 9, T. 33 N., R. 76 W., of the 6th P.M., Converse County, Wyoming, through which the right of way traverses, for the purpose of exploring said premises for oil and gas and other hydrocarbons and the production and removal of all of said minerals from said premises. It further seeks to permanently enjoin and restrain the Railway Company and Elliott from going upon the lands for the purpose of prospecting for oil, gas or other hydrocarbons, or for the purpose of producing, removing or selling any such substance from the lands in question and for an accounting of the oil produced and sold, from said right of way.

The Railway Company takes the position that since its predecessors in interest complied with the provisions of the Act of Congress of March 3, 1875, 43 U.S.C.A. § 934 et seq., it has a fee title to said right-of-way, together with all oil and gas and other minerals underlying said land. It further pleads as a defense to the complaint that it has held said 200 foot strip as a right-of-way under color of title in open and adverse possession for a period far in excess of ten years and by reason thereof it has acquired a valid fee title to said strip through adverse possession. It further contends that in the course of its business as a common carrier it consumes large quantities of oil and gas and by reason thereof is entitled to produce oil and other minerals from its right-of-way.

The defense of Elliott is so closely interwoven with the defense of the Railway Company that for the purpose of this opinion I will treat it as a joint answer.

The historical facts are not controverted and as disclosed by the stipulation of the parties they may be related, as follows:

The Wyoming Central Railway Company, predecessor in interest of the defendant Railway Company, complied with the provisions of the Act of Congress of March 3, 1875, for the purpose of locating, constructing, maintaining and operating a railroad through the public lands of the United States and securing the benefits of said Act. The Wyoming Central Railway Company was incorporated in 1885 under the general laws of the Territory of Wyoming; said company in 1886 proceeded with the construction of its road and during the first three months of the year 1887 completed said road across said Section 9; the stocks, properties, franchises and right of Wyoming Central Railway Company and Fremont, Elkhorn and Missouri Valley Railroad Company were merged and consolidated on June 4, 1891, into a consolidated company having the name of Fremont, Elkhorn and Missouri Valley Railroad Company. On February 28, 1903, the defendant Railway Company purchased all of the properties, franchises and rights of the companies aforesaid and since said date has continued to hold, maintain and operate said line of railroad across said Section 9 as a common carrier from the time of said purchase until the present time; that as a common carrier the Railway Company and each of its predecessors has been subject to and complied with the laws of the State of Wyoming and the United States applicable to common carriers by railroad.

On April 1, 1887, pursuant to the provisions of an Act of Congress of February 18, 1881, 21 U.S.Stat. 326, the Territory of Wyoming was given for University purposes, the NE¼ of the NW¼ of said Section 9. It is not in dispute that the state of Wyoming is the owner of said forty acre tract, subject to any valid interfering rights which may have existed at the date of said selection.

On January 25, 1902, a patent was issued by the United States to Sarah Isabel Bradley conveying the NW¼ NW¼ of Section 9, without reserva-

tions of minerals; on November 14, 1905, Sarah Isabel Bradley conveyed said 40 acre tract to Roscoe Crary; on October 9, 1906, Crary conveyed said 40 acre tract to the Mountain Home Sheep Company; on February 2, 1907, Mountain Home Sheep Company conveyed said tract to Mountain Home Company.

On November 21, 1916, the Mountain Home Company leased said 40 acre tract to Producers Oil Company for oil and gas purposes; on November 13, 1917, Producers Oil Company assigned said oil and gas lease to the Texas Company; on September 5, 1922, the Texas Company assigned said lease to the Texas Production Company; on January 2, 1932, the Texas Production Company assigned said lease to the Texas Company; on June 1, 1943, the Texas Company assigned said oil and gas lease to Continental; the oil and gas lease has been in full force and effect since November 21, 1916, and is now held by plaintiff.

On January 2, 1942, the state of Wyoming leased its 40 acre tract in Section 9 to the Merritt Oil Corporation; on December 31, 1945, the Merritt Oil Corporation assigned said oil and gas lease to the Continental; said oil and gas lease has been owned and held by Continental since said date and remains in full force and effect. All of said conveyances hereinabove referred to were properly executed and recorded and their validity is not assailed in this action.

The taxing officials of Converse County, Wyoming, have never levied or assessed any taxes upon the NE¼ NW¼ of Section 9 or any part thereof; neither have the defendants paid any taxes levied or assessed upon the NW¼ NW¼ of Section 9; the Railway Company and its predecessors in interest have, however, paid all taxes levied and assessed against them under the provisions of Article 13 of Chapter 32, Wyoming Compiled Statutes 1945.

On September 1, 1955, the Railway Company entered into an agreement with Elliott authorizing it to drill oil wells upon the right-of-way in Converse County and elsewhere in Wyoming and to produce and remove the oil from their right-of-way. The Railway Company was to receive 18¾% of the market value of all production and also reserving the right to take the royalty in kind. The Railway Company did not warrant its title and the contract further provided that in the event claims for damages were asserted or suits or other legal proceedings instituted or action taken by third parties adverse to either of the parties, each of the contracting parties assumed all risk and all loss, damage, costs and expenses incurred.

Following the execution of the agreement Elliott entered upon the right-of-way in question and commenced the drilling of an oil well and completed the same in November 1955. Production of oil was obtained therefrom. No well had ever been drilled upon said right-of-way previously by the Railway Company or anyone under its authority although both forty acre tracts have been in production of oil for almost forty years.

The question for decision might be simply stated in these terms: "Did the Railway Company or its predecessors acquire the minerals underlying the right-of-way by the Act of Congress? If they did not acquire the minerals by the Act did they acquire them through adverse possession?"

Sections 1 and 4 of the Act of Congress of March 3, 1875, 43 U.S.C.A. §§ 934, 937, are as follows:

"The right of way through the public lands of the United States is granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from

the public lands adjacent to the line of said road, *material, earth, stone, and timber necessary for the construction of said railroad;* also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road." (Italics supplied.)

"Any railroad company desiring to secure the benefits of sections 934 to 939, inclusive, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

The nature and extent of the title obtained by the Railway Company by virtue of said grant must be held to be that intended by Congress at the time of the grant if such intention can be discerned.

This case is simplified by judicial construction having been placed upon the Act by both the Supreme Court of the United States and the Tenth Circuit.

In Great Northern Railway Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836, the Railway Company was enjoined from using the right-of-way granted it under the Act of March 3, 1875, for the purpose of drilling for or removing oil and gas and minerals underlying the right-of-way. The Railway Company in that case contended that under the Act of March 3, 1875, it acquired title to the oil, gas and other minerals. Brushing aside this argument the Court said, 315 U.S. at page 271, 62 S. Ct. at page 532:

"The Act of March 3, 1875, from which petitioner's rights stem, clearly grants only an easement, and not a fee. Section 1 indicates that the right is one of passage since it grants 'the', not a, 'right of way through the public lands of the United States'. Section 2 adds to the conclusion that the right granted is one of use and occupancy only, rather than the land itself, for it declares that any railroad whose right of way passes through a canyon, pass or defile 'shall not prevent any other railroad company from the *use and occupancy* of the said canyon, pass, or defile, for the purposes of its road, *in common* with the road first located.' "

Again, 315 U.S. at page 276, 62 S.Ct. at page 535:

"Congress itself in later legislation has interpreted the Act of 1875 as conveying but an easement. The Act of June 26, 1906, c. 3550, 34 Stat. 482, 43 U.S.C.A. § 940 declaring a forfeiture of unused rights of way, provides in part that: 'the United States hereby resumes the full title to the lands covered thereby (by the right of way) freed and discharged from such easement'. This language is repeated in the forfeiture act of February 25, 1909, c. 191, 35 Stat. 647, 43 U.S.C.A. § 940. Also on June 26, 1906 [43 U.S.C.A. § 944], an act was passed confirming the rights of way which certain railroads had acquired under the 1875 Act in the Territories of Oklahoma and Arizona. The House committee report on this bill said: 'The right as originally conferred and as proposed to

be protected by this bill simply grants an easement or use for railroad purposes. Under the present law wherever the railroad passes through a tract of public land the entire tract is patented to the settler or entryman, subject only to this easement'. It is settled that 'subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject.' Tiger v. Western Investment Co., 221 U.S. 286, 309, 31 S.Ct. 578, 583, 584, 55 L.Ed. 738. See also Cope v. Cope, 137 U.S. 682, 11 S.Ct. 222, 34 L.Ed. 832; United States v. Freeman, 3 How. 556, 11 L.Ed. 724. These statutes were approximately contemporaneous with petitioner's acquisition of the rights of way of the St. Paul, Minneapolis and Manitoba Railway.

"That petitioner has *only an easement* in its rights of way acquired under the Act of 1875 is therefore clear from the language of the Act, its legislative history, its early administrative interpretation and the construction placed upon it by Congress in subsequent enactments." (Italics supplied.)

And again, 315 U.S. at page 279, 62 S.Ct. at page 536:

"Since petitioner's right of way is but an easement, it has *no right to the underlying oil and minerals.*"

Following the Great Northern case the Tenth Circuit in the case of Missouri-Kansas-Texas R. Co. v. Ray, 177 F.2d 454, had occasion to comment upon the Act of March 3, 1875. Chief Judge Phillips said at page 456:

"Prior to the decision in Great Northern R. Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836, the Supreme Court had held in a long line of decisions that the right of way granted by the Act of March 3, 1875, and other similar acts, was 'neither a mere easement, nor a fee simple absolute, but a limited fee, made on an implied condition of re-

verter in the event that the company ceases to use or retain the land for the purposes for which it is granted, and carries with it the incidents and remedies usually attending the fee.' See Rio Grande Western R. Co. v. Stringham, 239 U.S. 44, 47, 36 S.Ct. 5, 6, 60 L.Ed. 136. But, in the Great Northern case, supra, *the court held that a grant of a right of way, under the Act of March 3, 1875, 43 U.S.C.A. § 934. et seq., through public lands of the United States grants an easement only, not a fee, and confers no right to oil and minerals underlying the right of way.*" (Italics supplied.)

To the same effect in Himonas v. Denver & R. G. W. R. Co., 10 Cir., 179 F.2d 171, Chief Judge Phillips again referred to the Great Northern case and held that under the Act the railroad company acquired only an easement for railroad purposes and only that easement passed to the railroad company. At page 172 he stated:

"By the grant under the Act of March 3, 1875, the Carbon County Railway Company acquired *only an easement* for railroad purposes and *only* that easement passed to the Railroad Company. The fee or servient estate remained in the United States. Great Northern Ry. Co. v. United States, 315 U.S. 262, 272, 62 S.Ct. 529, 86 L.Ed. 836. That case overruled earlier decisions which had held that a railroad which acquired a grant for a right of way under the Act of March 3, 1875, took a limited fee on an implied condition of reverter in the event the railroad should cease to use or retain the land for the purposes for which it was granted. See Missouri-Kansas-Texas R. Co. v. Ray, 10 Cir., 177 F.2d 454.

"Since the Railroad Company did not own the fee, it could not dedicate or grant any part thereof, *and no right in the servient estate could be acquired by prescription.*"

In the case of United States v. Union Pacific Railroad Co., 10 Cir., 230 F.2d 690, decided Feb. 24, 1956, Judge Pickett fully explored the extent of the estate conveyed in the right-of-way grants and in commenting on the Act of 1875 held that the railroad company under said Act was not entitled to underlying minerals. He stated at page 693:

"It is urged that the cases hereinabove cited are not authority here because the United States was not a party and the right to minerals underlying rights of way was not being considered. This is true, but in the Great Northern Ry. Co. v. United States case, 315 U.S. 262, 62 S.Ct. 529, 534, 86 L.Ed. 836, the United States was a party and the precise question under consideration was the right to the minerals under-. lying the right of way of Great Northern. The rights in that case were acquired under the general Right of Way Statute. Act of March 3, 1875, 18 Stat. 482, 43 U.S. C.A. § 934. The court carefully analyzed the 'limited fee' cases and the Acts from which they arose, and held that under the 1875 Act, the railroad had only an easement in the right of way grant and *was not entitled to the underlying minerals.* This result was reached not by overruling, or even criticizing the former cases, but by distinguishing the grants and concluding that the 1875 Act was 'a product of the sharp change in Congressional policy with respect to railroad grants after 1871 * * *.' "

The defendants have made elaborate attempts to distinguish the case at bar from the Great Northern decision. I will not labor the point. The Supreme Court and the Tenth Circuit have used clear and imperative language in analyzing the Act as a whole and defining all of the provisions thereof. Apter words to indicate the intent to convey an easement only would be difficult to find. I would be presumptuous to attempt to give the Act a different meaning.

From the foregoing I hold that the Railway Company has only an easement by virtue of the grant under the Act of March 3, 1875, and has no right to the underlying oil and minerals as a recipient of said grant.

Turning now to the question of adverse possession. The Railway Company contends that if it did not acquire a fee title through the Act of 1875 it did nevertheless acquire a fee to the right-of-way through adverse possession.

The evidence discloses that over the years the Railway Company enclosed a portion of its boundary lines with fences and erected signs "C. & N. W. property" where fences were removed; that it dug wells and a cistern; stored materials and erected many buildings; that on one occasion a carnival used a part of the right-of-way; on some occasions it permitted livestock to graze on the right-of-way when properly herded.

In addition to the above, defendants introduced into evidence eighty-five exhibits comprising licenses, leases and permits granted by the Railway Company for surface use of the right-of-way. That the Railway Company was entitled to the exclusive use of its right-of-way there can be no doubt. See Midland Valley R. Co. v. Sutter, 8 Cir., 28 F.2d 163.

I have examined the oil and gas leases issued by the state of Wyoming on the NE¼ NW¼ of Section 9. The first lease was issued in June 1916 and it has been continuously under lease since said date. In addition thereto the tract has been producing oil since 1917. I fail to find where the state of Wyoming has ever recognized the Railway Company as the owner of the minerals underlying said right-of-way. The state leased the tract in its entirety and made reference to legally established right-of-way in the following language:

"(14) It is further understood and agreed that this lease is made subject to all legally established rights of way and subject to the granting of rights of way under the provisions of Chapter 85, Session

**418**

Laws 1905, but all rights of way granted shall be upon the condition that the use made thereof, or structures to be erected thereon shall be of such character as not to interfere with the operations and improvements of the party of the second part which are being had or are in existence at the time of the granting of such rights of way."

Again in the lease dated May 7, 1932, it provided:

"2. *Rights Of Way And Easements.* From the operation of this lease all lands heretofore granted for Rights of Way and Easements and reserves the right to grant such other Rights of Way and Easements as provided by the Statutes of the State of Wyoming, as long as such Rights of Way and Easements do not conflict with the operations for oil and gas on the land herein leased."

■ It is a general and accepted rule of law that title by prescription or adverse possession can not be acquired against the state unless specifically permitted by statute. See 2 C.J.S., Adverse Possession, § 5b, p. 516. We have no such statute. This principle of law is well settled in Wyoming. In Porter v. Carstensen, 40 Wyo. 156, at page 160, 274 P. 1072, at page 1073, the Supreme Court of Wyoming following the accepted rule stated:

"No title by adverse possession could be obtained by Carstensen and his predecessor in interest to the tract in dispute, if, and so long as, that tract belonged to the government. That principle is too well settled to need citation of authorities. See Decennial Digest, Adverse Possession, ☞7. * * *"

■ With equal emphasis it can be stated that title to school grant lands cannot be acquired as against the state no matter how long they have been adversely occupied. Van Wagoner v. Whitmore, 58 Utah 418, 199 P. 670; Murtaugh v. Chicago, M. & St. P. R. Co., 102 Minn. 52, 112 N.W. 860, 120 Am.St.Rep. 609;

O'Brien v. Wilson, 51 Wash. 52, 97 P. 1115; Newton v. Weiler, 87 Mont. 164, 286 P. 133, 136; State v. City of Seattle, 57 Wash. 602, 107 P. 827, 27 L.R.A.,N.S., 1188. Many other cases might be cited but I think the foregoing sufficient to show the Railway Company did not acquire by prescription or adverse possession the minerals underlying the NE¼ NW¼ of Section 9, and I so hold.

With respect to the remaining 40 acre tract the evidence discloses a patent was issued to Sarah Isabel Bradley on January 25, 1902. The patent contained the following reservation:

"Subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by the local customs, laws and decisions of courts, and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted, as provided by law; and there is reserved from the lands hereby granted, a right of way thereon for ditches or canals constructed by the authority of the United States."

It will be observed the reservation in the patent made no mention of the railway right of way traversing the premises.

On November 21, 1916, said tract was leased by the owner for oil and gas lease and said lease has been in full force and effect since said date. The lease did not except the right-of-way from its terms.

■ I cannot escape the reflection of the record in this case that there has been an uninterrupted production of oil from this 40 acre tract since 1917. It is an unbroken history of severance of the minerals from the surface estate. The rule prevails in this state that there can be no adverse possession of minerals that have never been worked and where

the mineral estate has been severed, possession of the surface can not be adverse to the owner of the minerals. This was decided in Wyoming in the case of Ohio Oil Co. v. Wyoming Agency, 63 Wyo. 187, 179 P.2d 773. The Court said 63 Wyo. at page 206, 179 P.2d at page 778:

"Defendant contends, also, that he has title to the mineral fee by adverse possession beginning in 1930, when he obtained a deed from purchaser at the tax sale, and continuing even after 1932 while Kane and Kane's successors occupied the surface. There could have been no adverse possession of minerals that have never been worked or even discovered. The authorities are unanimous in holding that where the surface and mineral estates have been severed, possession of the surface by its owner, cannot be adverse to the owner of the minerals, and that there can be no adverse possession of the severed mineral estate in the absence of mining operations. The cases are collected in notes, 13 A.L.R. 375; 67 A.L.R. 1442; 93 A.L.R. 1232. The rule is not changed by the fact that no one knows what minerals are or are not present. Stowers v. Huntington Development & Gas Co., 4 Cir., 72 F.2d 969, 98 A.L.R. 536. It is immaterial that the surface occupant claims the minerals under a deed that conveys the land by its customary description without reference to mineral rights reserved by an earlier recorded deed. J. R. Crowe Coal & Mining Co. v. Atkinson, 85 Kan. 357, 116 P. 499; Renfro v. Hanon, 297 Ill. 353, 130 N.E. 740; 1 Am.Jur., Adverse Possession, § 119."

Reviewing the entire record in a light most favorable to the Railway Company I can say the case is devoid of any effort by the Railway Company to take possession of the minerals underlying the right-of-way other than to give a lease to Elliott on the 1st day of September 1955. Yet for forty years prior to this lease this 40 acre tract was proven oil land with numerous oil wells within a few feet of the railway right-of-way on both sides of the track, in plain view of all who took occasion to observe. See Peterson v. Holland, Tex.Civ.App., 189 S.W.2d 94.

I hold the Railway Company did not acquire by adverse possession or prescription the minerals underlying its right-of-way on the NW¼ NW¼ Section 9.

During the trial of the case the defendant Elliott made a full report of the oil produced from the right-of-way. This testimony is treated by the Court as an accounting and fully complying with the demand of the plaintiff. The prayer of the complaint with respect to an accounting is denied.

It follows that plaintiff is entitled to a judgment permanently enjoining defendants from further drilling upon said right-of-way, or from prospecting same for oil, gas or other hydrocarbons, or for the purpose of removing or selling the same. The judgment will decree plaintiff to be the owner of said minerals underlying said right-of-way in the NW¼ NW¼, NE¼ NW¼, Section 9, Township 33 North, Range 76 West of the 6th Principal Meridian, Converse County, Wyoming, by virtue of the oil and gas leases now owned by said plaintiff covering the aforesaid premises.

I will not conclude this memorandum without making mention of the excellent briefs filed and exhaustive research conducted by counsel for both plaintiff and defendants.

Counsel for plaintiff will prepare findings of fact and conclusions of law in conformity with this memorandum and submit same, together with judgment, within twenty (20) days from the date hereof, allowing defendants proper exceptions, and the clerk will enter an order accordingly.