**Owen A. YENE and Judy Brock,**
**Appellants (Defendants),**

**v.**

**Harry H. STASSINOS and Evelyn M.**
**Stassinos, husband and wife,**
**Appellees (Plaintiffs).**

**No. 86-190.**

Supreme Court of Wyoming.

Dec. 30, 1986.

Bert T. Ahlstrom, Jr., Cheyenne, for appellants.

David M. Piaia of Kaumo, Piaia & Tyler, Rock Springs, for appellees.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Summary judgment was granted in a quiet-title action to void a recorded deed arising from an oral transaction for the purchase of real estate, now presenting the appeal question of existence of a factual issue enjoining summary judgment disposition. We remand for trial.

Appellants' statement of the issue on appeal essentially questions the trial court decision; appellees agree with the statement of the issue, and neither suggest what rule or principle was improperly violated or appropriately followed as a principle for application to a summary judgment.

This court will define the controversy to be whether there was a material issue of

fact created by summary-judgment documentation, including answers to interrogatories and affidavits, requiring trial resolution.

We discern as the established fact that in December, 1977 the parties entered into an oral real estate purchase agreement contendably involving two parcels. When the resulting litigation developed in 1981, now continued for five years, just about everything else was in factual conflict except that a warranty deed for two parcels had been executed and recorded in favor of the buyer.

Owen Yene and Judy Brock (the appellant is Brock as apparent successor in interest) entered into the transaction with Harry and Evelyn Stassinos to purchase Sweetwater County real estate. How much, for what price, and what was paid, created the factual disputes in the oral transaction, now continued in this unusual litigation.

■ The Stassinoses claimed by complaint to quiet title that the recorded warranty deed was delivered in error for two parcels, while payment of $7,000.00 had been made, sufficient only to pay for the first parcel, so that the composite deed for two parcels was invalid and voidable as to one tract as a result of mutual mistake and failure of consideration.[1] To understand the present status, those pleadings must be related to the summary-judgment decree whereby the court voided the claim of buyers to parcel two and ordered sellers to repay to buyers $1,500.00, which was found to be an overpayment. Unquestioned in the record is that buyers have paid whatever was claimed as a maximum for parcel one, $7,000.00, and had paid not less than $1,500.00 more, or, by their testimony, the *entire* purchase price for parcel two. The decree as entered did not even allow interest to buyers on their 1979–1980 overpayment.[2]

Documentation for a decision on whether an issue of fact exists, *Cordova v. Gosar*, Wyo., 719 P.2d 625 (1986) (Category 6), includes Brock's answers to interrogatories and affidavit, and affidavits of the Stassinoses' present counsel and past counsel, and three signed by them.

■ Recognizing the parameters of litigation as whether there was a "deal" on the second parcel and what was actually paid, we find the following sequence in the file as relevant evidence:

(1) Brock's Answers to Interrogatories: There was an oral agreement for two parcels totaling 7.67 acres at $3,000.00 per acre; $1,000.00 down payment, $6,000.00 paid in full for two acres. A deed was given. Brock has been in possession since 1978 and paid a total of $21,000.00. Payments claimed are December 8, 1977—$1,000.00; February 14, 1978—$1,500.00; December 18, 1978—$500.00; May 8, 1978—$2,500.00; January 4, 1976—$6,000.00; May 26, 1978—$5,000.00; February 7, 1978—$500.00. The other buyer, Yene, has additional money-order receipts.

(2) Affidavit of attorney for Stassinoses: Defendants provided evidence of payment to plaintiff, pursuant to request for production of documents, in the amount of $8,500.00 for payment of Parcel A and part payment of Parcel B, the receipt of which is admitted by plaintiff, and:

"c. That Defendants have not provided evidence of any payments in excess of Eight Thousand Five Hundred and

---

1. This creates an interesting anomaly, since, by the documentation, the buyer was entitled to a deed for one parcel and consequently the deed was not generally voidable but is contendably invalid and voidable only as to the second parcel. Additionally, plaintiffs do not claim to be in possession in the complaint, and later by answer to interrogatories Brock claims possession since January 4, 1978. See § 1–32–201, W.S.1977, and Rule 84, W.R.C.P., Appendix Form 16.

2. Stassinos never alleged overpayment by pleading, and counterclaims of Brock included negligence, malicious prosecution, lost land, and mental anguish, but not repayment as relief to be afforded. Consequently the summary-judgment action on the repayment was neither offered by Stassinos nor requested by Brock.

00/100 Dollars ($8,500.00) for both Parcels A and B, and that Plaintiffs deny receiving any amount in excess of said Eight Thousand Five Hundred and 00/100 Dollars ($8,500.00).

"d. That William H. Jackson, the attorney representing Plaintiffs, while waiting for information to complete the promissory note and mortgage for the sale of Parcel B to Defendants, inadvertently recorded the Warranty Deed, attached hereto as Exhibit 'A', containing Parcel A and Parcel B.

"e. That Plaintiffs never intended to transfer Parcel B, outright, to Defendants, nor did Plaintiffs have any knowledge that said transfer had been made until May of 1980, which date was more than two (2) years after Mr. Jackson had inadvertently recorded the Warranty Deed, attached hereto as Exhibit 'A'.

"5. That the three issues, which the Answer purports to raise, are without merit, and the inference irresistible that the purpose intended to be served by said pleadings will be merely to delay this action and to impede Plaintiffs in their rights.

"6. That upon these facts and upon the facts communicated to Affiant by Plaintiffs, Affiant is firmly convinced that there is and can be no defense to this action, and that Defendants' Answer is wholly without merit, and has been interposed for the purpose of delay, and for no other purpose." [3]

(3) Harry Stassinos' affidavit dated October 31, 1985:

"4. That said Defendants agreed to purchase Parcel A, consisting of 2.00 acres for cash at the price of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00) per acre.

"5. That on or about December 8, 1977, Defendants paid One Thousand and 00/100 Dollars ($1,000.00) as a down pay-

ment for Parcel A and on or about January 4, 1978, Defendants paid the remaining Six Thousand and 00/100 Dollars ($6,000.00) for Parcel A, after which payment said Defendants were to receive a Warranty Deed to said Parcel A.

"6. That with regard to the purchase of Parcel B, consisting of 5.67 acres, my wife and I agree to finance the purchase price of Nineteen Thousand Eight Hundred Forty-Five and 00/100 Dollars ($19,845.00) at nine per cent (9%) interest with the term of years adjustable according to the amount the Defendants could afford to pay in monthly payments.

"7. That Defendants never informed me of the amount of monthly payments which they could afford to pay, and the note and mortgage were never drafted by our attorney, Mr. William H. Jackson * * *.

*    *    *    *    *    *

"9. That Owen A. Yene and Judy Brock, Defendants herein, have paid a total of Eight Thousand Five Hundred and 00/100 Dollars ($8,500.00), which amount represents payment in full of Seven Thousand and 00/100 Dollars ($7,000.00) for Parcel A and One Thousand Five Hundred and 00/100 Dollars ($1,500.00) toward the purchase of Parcel B."

(4) Evelyn M. Stassinos' affidavit of October 31, 1985:

"4. That said Defendants agreed to purchase Parcel A, consisting of 2.00 acres for cash at the price of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00) per acre.

"5. That on or about December 8, 1977, Defendants paid One Thousand and 00/100 Dollars ($1,000.00) as a down payment for Parcel A and on or about January 4, 1978, Defendants paid the remaining Six Thousand and 00/100 Dollars ($6,000.00) for Parcel A, after which pay-

---

**3.** Questionable in terms of ethics and possible perjury where statements of fact are made under oath by an attorney as a litigator, third-party nonpersonal knowledge affidavits are not "evidence" for summary-judgment proceedings.

*Cordova v. Gosar, supra; Cook Ford Sales, Inc. v. Benson,* Wyo., 392 P.2d 307 (1964).

Counsel could be exposed to subpoenaed-witness status in any final trial if professing factual personal knowledge.

ment said Defendants were to receive a Warranty Deed to said Parcel A.

"6. That with regard to the purchase of Parcel B, consisting of 5.67 acres, my husband and I agreed to finance the purchase price of Nineteen Thousand Eight Hundred Forty-Five and 00/100 Dollars ($19,845.00) at nine percent (9%) interest with the term of years adjustable according to the amount the Defendants could afford to pay in monthly payments.

"7. That Defendants never informed me of the amount of monthly payments which they could afford to pay, and the note and mortgage were never drafted by our attorney, Mr. William H. Jackson * * *.

"8. That in May, 1978, I contacted Owen A. Yene, a Defendant herein, and inquired as to whether or not he intended to go through with the purchase of Parcel B and he responded that he was still interested in purchasing said Parcel B, however, nothing more was done.

"9. That again in December, 1978, I contacted Mr. Owen A. Yene, and told him that 'if he intended to purchase Parcel B, I would need some money as payment' and Mr. Yene sent me a bank check in the amount of Five Hundred and 00/100 Dollars ($500.00) and stated that more money would follow.

"10. That in February, 1979, I received an additional One Thousand and 00/100 Dollars ($1,000.00) from Mr. Yene as payment for Parcel B, however, no paperwork, to my knowledge, had yet been drafted by Mr. William H. Jackson.

"11. That after February, 1979, I did not hear anything more from either Defendants, nor did I receive any further payment for Parcel B."

(5) Affidavit of William H. Jackson, a prior attorney for the Stassinoses:

"1. That I was the attorney representing Harry and Evelyn Stassinos at the time said individuals sold land to Owen A. Yene and Judy Brock, which land was located in the SW ¼ of Section 20, Township 20 North, Range 105 West of the 6th Principal Meridian, Sweetwater County, Wyoming.

"2. That the specific land which was purportedly sold to Owen A. Yene and Judy Brock consisted of a 2.00 acre parcel and a 5.67 acre parcel, which parcels are more particularly described in a copy of the Warranty Deed attached hereto as Exhibit 'A', and by this reference made a part hereof.

"3. That according to the records in my possession, Owen A. Yene and Judy Brock were to pay $3,500.00 per acre for a total cost of $26,845.00 for the purchase of 7.67 acres.

"4. That my records further indicate the above-mentioned purchase was to be on the following terms:

"Owen A. Yene and Judy Brock paid $7,000.00 for two acres of land and were to receive a Warranty Deed free and clear of any mortgage, and the remaining 5.67 acres would be financed by Harry and Evelyn Stassinos and subject to a mortgage, payable monthly at 9% interest.

"5. That in accordance with the above-mentioned terms, I prepared the Warranty Deed attached hereto as Exhibit 'A', containing both parcels of land.

"6. That I was unable to complete the mortgage and order the amortization schedule until Evelyn Stassinos informed me of the amount which Owen A. Yene and Judy Brock were willing to pay monthly.

"7. That on or about January 13, 1978, before I had completed the mortgage, I mistakenly recorded the Warranty Deed attached hereto as Exhibit 'A' containing both parcels of land."

(6) Testimony of Evelyn Stassinos in a different case:

"Q. Would you recall for the Court the nature of those negotiations?

"A. They were gonna buy two—they wanted to buy eight acres. They were gonna pay for two, thirty-five hundred an acre, which they did. They paid for that, I believe it was in a $6,000.00 check

and then a $1,000.00 followed after, I think it was after the first of the year.

"Q. Okay. So they paid in full for the two acres?

"A. Yes, they paid two acres in full, and then there was to be a time payment schedule made up, and they were gonna—I don't know exactly how much or how long—and take ten years at 9½% interest, which never was done.

\* \* \* \* \* \*

"Q. And what was going to be the purchase price for those six acres?

"A. Thirty-five hundred an acre.

"Q. Mrs. Brock has testified that she has forwarded payments to you on those six acres.

"A. No. When Mr. Yene was still living here, he was living at the ranch in our house at the ranch, and he came and gave $500.00.

"Q. To apply towards this second six acres?

"A. Yes. And then after he left, he mailed—it was like two money orders or something, in $500.00 each. So, there's been a total of fifteen hundred dollars paid.

\* \* \* \* \* \*

"A. Okay. Mr. Jackson was our attorney at the time. He was supposed to draw a time schedule and Mr. and Mrs. Yene was supposed to come in to his office and tell him how much they wanted to pay and for how long. This is supposed to have been at 9½% interest on this.

\* \* \* \* \* \*

"Q. All right. In May of 1980, were you under the impression that there was—that they had an option on that land?

"A. This is what we assumed, yes; that's what we thought still was."

(7) Affidavit of Judy Brock dated December 27, 1985:

"2. That during the latter part of December, 1977, she participated in negotiations to purchase the subject property from the Plaintiffs in Civil No. 5634, which comprised approximately 8 acres, in 2 parcels.

"3. That, pursuant to the agreement of the parties, the purchase price was paid, in total, during the year 1978, partially by check and partially by cash.

"4. That after Parcel A (2 acres) was paid off, your Affiant and Plaintiff Evelyn Stassinos entered into an agreement for a cash settlement as to the remaining balance on Parcel B (5 + acres), for the reason that said Plaintiff stated that she wanted to divert the cash to her own use in that she was going to obtain a divorce from Plaintiff Harry Stassinos, and she needed the cash to supplement her income after the divorce.

"5. Pursuant to that agreement, and as a means of security to your Affiant, Plaintiff Evelyn Stassinos caused the Warranty Deed pertaining to said property to be recorded; and your Affiant was given a copy of the recorded instrument.

"6. That no formal contracts were ever prepared by William Jackson, Plaintiffs' Attorney, because payment was made and the transaction was completed before he got around to it.

\* \* \* \* \* \*

"9. That all monies requested to be paid for said land were paid in full; and that the Deed was recorded as per those agreements."

The record reflects no direct refutation by Mrs. Stassinos to answer the cash-payment statement by Mrs. Brock.

■ There was an issue of fact as to what the deal was and what was paid.[4] The test is:

"The motion for summary judgment should be sustained in the absence of a real and material fact issue considering

---

**4.** Except by adverse allusion and appearances of litigative conclusion, the counterclaim issues, as put in contest by the general denials of the reply, were never addressed by the summary-judgment motion, nor by the judgment. Under the circumstances, and in the absence of discussion in the briefs, we will not further address questions of Rule 5.04, W.R.A.P. compliance.

movant's burden, respondent's right to the benefit of all favorable inferences and any reasonable doubt, with credibility questions to be resolved by trial." *Cordova v. Gosar, supra,* 719 P.2d at 640.

That test is not met by these factual circumstances as the record now is found. Mrs. Brock may or may not be able to satisfy her burden of proof before the trier of fact that she has paid more than $8,500.00, but certainly she satisfies this court that an issue of fact exists both as to amounts paid and as to the legal status and factual terms of the sales agreement. *Cordova v. Gosar,* supra. Compare *Hensley v. Williams,* Wyo., 726 P.2d 90 (1986), where the record is written documents.

Considering the continuation of this litigation now existent since 1981, we are reluctant to prolong the agony, but, lacking an alternative, remand for trial to determine what was the deal and who, if anyone, is in breach and with what result. Additionally, disposition should resolve the contentions found in the counterclaims as affirmative claims within the burden-of-proof responsibilities of Brock as defendant, to which subject no affidavit contention is addressed except the conclusional comments of counsel in his affidavit. It would be provident for the parties to rethink their theories and legal contentions for trial application, since on this record possession of the contested land by plaintiffs was neither alleged nor proved as an element of a quiet-title action. Section 1-32-201, W.S. 1977. See *The Ohio Oil Company v. The Wyoming Agency,* 63 Wyo. 187, 179 P.2d 773 (1947).

The summary judgment is reversed, and the case is remanded for trial disposition.